Filed 3/4/14  Villafana  v. County of Los Angeles CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT VILLAFANA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B244114<br><br>(Los Angeles County<br>Super. Ct. No. BC450103) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Affirmed.

        Myer Law Firm and Scott D. Myer for Plaintiff and Appellant.

        Law Offices of David J. Weiss, David J. Weiss, and Peter M. Bollinger for Defendant and Respondent.

_____

Appellant Robert Villafana sued respondent County of Los Angeles (County) for violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code § 12900 et seq.),[1] the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.), the California Family Rights Act (§ 12945.2), and sections 1981 and 1983 of title 42 of the United States Code.  He also claimed his termination was wrongful in violation of public policy.  The trial court granted County's summary judgment motion on the ground that there was no triable issue of material fact as to whether County committed misconduct during the statutory period.  It found no continuing violation exception to the applicable limitations period.  We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Villafana began working as a children's social worker at the Los Angeles County Department of Children and Family Services in 1985.  In October 1991, a County employee left a child unattended with the child's father during a monitored visit.  When Villafana noticed the father and child were unmonitored, he went to find out who was responsible for supervising the visit.  Villafana later obtained a court report that described in detail that the County employee was absent when the father had molested the child during the unsupervised portion of the visit.  Sometime in 1991, Villafana told his supervisor about the abuse.  Between 1991 and 2008, he reported the incident at least seven times to various individuals and entities, including a department administrator, the City Attorney, a police detective, the Board of Supervisors, and coworkers.  In November 1991, Villafana's supervisor reprimanded him for misconduct during a grievance hearing allegedly concerning the abuse incident.

Starting in 1994, Villafana began a series of prolonged absences from the workplace.  In January 1994, an earthquake damaged County offices, so all employees, including Villafana, worked from home.  In his deposition, Villafana stated "there was no hostile work environment" when he worked from home.  After six months, County notified employees to return to work and Villafana resumed working in the office.  But

---

[1]     All further references are to the Government Code, unless otherwise indicated.

by summer 1995, he underwent knee surgery "to get out on stress [leave]" for three months. Upon returning to the workplace, Villafana said he experienced stress and frustration because County had not investigated the 1991 incident. In 1996, he took multiple sick and stress days "due to the child abuse cover-up." As a result, he was placed on "certified time" for missing 15 days of work during a 61-day working period. Villafana presented a physician's note requesting a three-week medical leave in September 1996. And in December 1996, he filed a workers' compensation claim for work-related stress due to County's failure to investigate the 1991 incident, and for allegedly having disciplined him for reporting the abuse.

Villafana's workers' compensation case was resolved in his favor in February 1998. He then returned to the workplace. In March 2000, Villafana attempted to reopen his workers' compensation claim, seeking to take additional time off due to stress from the 1991 incident, County's failure to investigate, and a hostile work environment. March 20, 2000 was his last day at work. A physician certified his absence was due to a "total . . . disability."

When his second workers' compensation claim was denied, Villafana applied for long-term disability benefits through County's plan. Medical certifications from a psychiatrist concluded that Villafana was "temporarily totally disabled" through September 2003, from which date the psychiatrist verified that Villafana was "permanently psychiatrically disabled." In December 2004, he was approved for benefits until age 65 because he met the Social Security criteria for "total disability" as of September 2000. A psychiatrist again certified his disability and inability to work. While on disability leave, Villafana requested County "remove" the alleged hostile work environment and investigate the 1991 incident. Additional certifications from the psychiatrist in December 2002, July 2004, June 2006, and August 2007 indicate that Villafana was able to work part-time in "a very limited [number of] jobs" with the restriction that there be "no ethical conflict." Finally, in July 2008, the psychiatrist

certified that Villafana was unable to work in "his regular occupation" and "*any* occupation," even on a part-time basis.

In October 2008, County notified Villafana of its intent to release him from employment pursuant to Civil Service Rule 9.08 for medical reasons. The notice listed five bases supporting the release: (1) Villafana had not reported to the office since March 2001;[2] (2) there was "no suitable position in which [he could] perform satisfactorily"; (3) he met the Social Security criteria for "total disability"; (4) he received long-term disability benefits and was scheduled to continue receiving them until he reached age 65; and (5) he was ineligible for disability retirement. In response, Villafana claimed his absence from the office was due to the work-related stress induced by the hostile work environment resulting from the 1991 incident. County then confirmed its decision to release Villafana, effective November 24, 2008, without prejudice so that he could be considered for reemployment should his medical condition improve. The decision stated that Villafana's response did not present any information "to contradict the basis and facts supporting [County's] decision to proceed with the release."

In December 2008, Villafana petitioned the Civil Service Commission for a hearing on County's decision to release him. At the hearing, Villafana said his physician had not permitted him to return to work. As a result, the Commission denied his petition and determined he was unlikely to prevail absent a letter from his physician indicating his ability to return to work. In December 2009, Villafana's long-term disability benefits were terminated because he reached age 65. He applied for retirement benefits so that they would begin shortly after his disability benefits ended.

In November 2009, Villafana's attorney filed two claims on his behalf. The first was a government tort claim against County claiming wrongful termination, disability discrimination, failure to accommodate, hostile work environment, retaliation, and violation of his constitutional rights. The second was a complaint with the California

[2] County's notice listed March 31, 2001 as Villafana's last day in the office. However, Villafana's testimony at his deposition twice confirmed that his last day was March 20, 2000.

4

Department of Fair Employment and Housing (DFEH) alleging harassment, discrimination, denial of accommodation, and retaliation based on age, religion, national origin, ancestry, and disability. His DFEH case was closed the same day because he requested and received a right-to-sue letter.

In November 2010, Villafana filed a civil complaint against County seeking compensatory damages. There were eight causes of action: (1) harassment in violation of section 12940, subdivision (j); (2) discrimination based on age, religion, national origin, ancestry, disability, and his pattern of complaints in violation of section 12940, subdivision (a); (3) retaliation in violation of section 12940, subdivision (h); (4) Family Medical Leave Act (FMLA) and California Family Rights Act (CFRA) violations; (5) denial of accommodations in violation of section 12940, subdivision (m); (6) failure to prevent discrimination, harassment, and retaliation in violation of section 12940, subdivision (k); (7) wrongful termination in violation of public policy; and (8) civil rights violations pursuant to sections 1981 and 1983 of title 42 of the United States Code.

In December 2011, County filed a motion for summary judgment, which included a separate statement of undisputed facts. Villafana filed a timely opposition, contested the motion on the merits, requested a continuance to obtain a medical report pursuant to Code of Civil Procedure section 437c, subdivision (h), and asked the court to strike County's motion pursuant to California Rules of Court, rule 1.20(b) because it improperly disclosed his Social Security number. The court rescheduled the summary judgment hearing to May 2012. Because County failed to redact confidential information, the court ordered all motion paperwork stricken. It stated, "Counsel for defendant [County] is to file a new motion for Summary Judgment within ten (10) days." On March 6, 2012, County filed a new motion for summary judgment, without Villafana's Social Security number, but did not include a separate statement of undisputed facts. It served Villafana by mail. Villafana filed his opposition and separate statement, opposed the motion on the merits, and moved to strike County's motion for violation of the notice provision of Code of Civil Procedure section 437c, subdivision (a).

5

The basis for that argument was that the motion had been filed 79 days before the scheduled hearing, rather than 80 days, as required by that statute.

In April 2012, County filed its separate statement and opposition to Villafana's motion to strike. Villafana then moved to strike County's late-filed papers, including the separate statement. County opposed the motion, arguing that Villafana suffered no prejudice. The court granted County's motion for summary judgment and later entered judgment in favor of County. Villafana filed this timely appeal.[3]

## DISCUSSION

### I

We review the court's granting of continuances and exceptions to the summary judgment filing deadlines, and its rulings on the admissibility of evidence, for abuse of discretion. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100 [reviewing continuances for abuse of discretion]; *Robinson v. Woods* (2008) 168 Cal.App.4th 1258, 1261 [reviewing court's rulings on notice issues for abuse of discretion]; *People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639-640 [reviewing trial court ruling on admissibility of evidence for abuse of discretion].)

### A.    *Code of Civil Procedure Section 437c*

Villafana argues the court had no jurisdiction to decide the motion for summary judgment given defects in pretrial procedure that deprived him of due process. Specifically, he contends County's filings were untimely in violation of Code of Civil Procedure section 437c, subdivision (a), and the court abused its discretion in considering them.

On motions for summary judgment, notice of the motion and supporting papers must be served on all parties to the action at least 80 days before the time appointed for

---

[3]    In a subsequent proceeding, the court amended its judgment granting the motion for summary judgment and awarded costs and fees to County. Villafana filed a separate notice of appeal from the amended judgment concerning the award of costs and attorney fees (*Villafana v. County of Los Angeles*, B246866). We do not discuss fee or cost issues in this opinion.

the hearing, when served by mail to any address in California. (Code Civ. Proc., § 437c, subd. (a).) Courts may not shorten the notice period without the consent of the parties. (*Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 764 (*Urshan*) ["[T]he Legislature did not . . . authorize a trial court to shorten the minimum notice period for hearings on summary judgment motions. . . . Moreover, the statutory language regarding minimum notice is mandatory, not directive"]; *McMahon v. Superior Court* (2003) 106 Cal.App.4th 112, 115 ["The subdivision does not contain any language authorizing courts to shorten the . . . notice period"].) In limited circumstances, judgments must be reversed when a court order violates the statutory notice requirements. (*Urshan*, at pp. 765-766 [reversing summary judgment order where court provided "only two days" to prepare motion paperwork in violation of Code of Civil Procedure section 437c, subdivision (a)].) However, when the notice violation is attributable to the moving party's late filing, and does not violate a court order, an opposing "party's appearance at the hearing of a motion and filing of opposition to the motion is a waiver of any defects in the moving party's notice of motion." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 650-651 (*Boyle*).) Thus, reversal is not required for a defendant's notice violation when plaintiffs opposed the motion on the merits, simply stated that service was not in compliance with the statute, appeared and argued at the hearing, did not request a continuance of the hearing, and did not claim prejudice. (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 (*Carlton*).)

The facts here are distinguishable from cases that have required the reversal of summary judgments where courts shortened the minimum notice periods. County first provided notice of its motion for summary judgment to Villafana on December 13, 2011. After Villafana moved to strike the filing because it improperly included his Social Security number, the court ordered County "to have a new motion and all supporting documentation refiled within 10 days with all of the appropriate redactions . . . [and to] [r]efile the whole thing." The court also struck Villafana's opposition filings, and directed that they be "refiled in response to the refiled motion." The court and the parties

7

agreed that the refiled motion was "going to be the same . . . without substantive changes . . . ." The court continued the hearing date to May 24, 2012. Five days later, County refiled and served by mail its motion for summary judgment, without substantive changes. This is the filing that was made 79 days prior to the new hearing date. Villafana timely filed his opposition to the refiled motion and original separate statement. Even though County did not refile its separate statement until April 26, 2012, just 28 days before the scheduled hearing, Villafana had adequate time to respond since all parties were ordered to submit documents that were substantially identical to those served well before the May 24 hearing date. Because Villafana argued the case, opposed the motion on the merits, simply mentioned the notice issue, and adequately submitted his filings, reversal is not required. (See *Carlton*, *supra*, 77 Cal.App.4th at p. 697.) Accordingly, the court did not abuse its discretion in considering County's late-filed papers.

Villafana argues the holding in *Urshan* deprives the court of jurisdiction to hear County's motion. The parties in that case "had less than two days to prepare a motion or opposition. Not only was this shortened time period violative of the statute, notice and opportunity to prepare to be heard was so minimal the procedure was tantamount to a denial of due process." (*Urshan*, *supra*, 120 Cal.App.4th at p. 765.) Here, Villafana was afforded more than six months notice of County's motion and separate statement. County's late-filed redacted documents did not contain substantive changes from the original filings.[4] As a result, Villafana had adequate notice and was not deprived of due process. Thus, the court had jurisdiction to consider County's substantially similar summary judgment motion papers.

Villafana also argues that the court's limitation on the evidence the parties could resubmit violated his procedural rights. He contends the order prohibiting additional

---

[4]     Villafana argues that County included new evidence in its refiled motion by adding a paragraph to a declaration and handwritten markings on two pages of evidence. These changes are not substantial, but even assuming that they were, Villafana has not demonstrated how they prejudiced his ability to oppose the motion. In any case, we do not rely on the additional paragraph in this opinion.

8

evidence beyond that submitted in the first motion violated the summary judgment statute, but does not indicate which provision. He relies on an asbestos case in which the court held it improper for a trial court to order an expedited summary judgment procedure in which the notice period was shortened and parties were not required to file supporting papers apart from an attorney certification. (*Boyle*, *supra*, 137 Cal.App.4th 645 [reversing summary judgment granted under expedited procedure that violated notice and supporting evidence requirements of Code of Civil Procedure section 437c].) Villafana contends "it should similarly be improper and a violation of due process to prevent the opposing party from filing any documents beyond what was filed for an earlier motion." We do not agree. In limiting the scope of the refiled documents, the trial court was attempting to minimize the inconvenience and burden on the parties to resubmit materials on a shortened timeframe. Since both sides were ordered to resubmit the same documents previously prepared without any court-ordered limitations, the court did not violate Villafana's procedural rights.

B.      *California Rules of Court, Rule 3.1350(d)*

Villafana also claims the motion for summary judgment was defective in its formatting. He contends the court abused its discretion in considering County's filings that failed to consecutively number the facts, and in which there were other technical errors. There was no violation of his due process rights.

California Rules of the Court, rule 3.1350(d) requires, in relevant part, that the separate statement "separately identify each cause of action, claim, issue of duty, or affirmative defense, and each supporting material fact claimed to be without dispute with respect to the cause of action, claim, issue of duty, or affirmative defense . . . [i]n a two-column format . . . in numerical sequence." In reviewing the court's consideration of County's filings for abuse of discretion, we note that "the court's power to deny summary judgment on the basis of failure to comply with California Rules of Court, rule 3.1350 is discretionary, not mandatory." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118 [affirming summary judgment order where "[t]he facts critical to the ruling were

9

adequately identified, and Plaintiffs have not explained how any alleged deficiency in [defendant's separate statement] impaired Plaintiffs' ability to marshal evidence to show that material facts were in dispute"].) We are not required to reverse summary judgment simply because the court considered filings that were noncompliant in format.

In addition, Villafana failed to demonstrate prejudice. "'Anyone who seeks an appeal to predicate a reversal of [a judgment] on error must show that it was prejudicial. (Cal. Const., art. VI, § 13.)' [Citation.]" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) As detailed above, Villafana received County's original filings five months before the May 24, 2012 hearing date. When County refiled its motion and separate statement, Villafana responded in a timely fashion. He did not demonstrate how County's failure to sequentially number and properly identify each cause of action impaired his ability to contest any factual disputes. Instead, Villafana responded as if the filings were proper in all respects. Accordingly, we find no abuse of discretion in considering County's filings.

C. *Evidentiary Objections*

Villafana argues County did not present admissible evidence in support of its motion, and as a result, failed to satisfy its initial burden. Specifically, he contends County failed to submit proper declarations in support of its exhibits.

"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (Code Civ. Proc., § 437c, subd. (d).) Here, the declaration from County's counsel, Yevgenia Agadzhanova, stated, in relevant part, "I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify to the facts stated herein." In its opposition to Villafana's objections, County argued the declarant had personally observed the attached deposition and had received other attached evidence during discovery with signed verifications from Villafana. It also

10

raised various applicable rules to support the admission of the exhibits.[5] As a result, the court overruled Villafana's objections to the attached exhibits. Villafana raises no other valid evidentiary challenges on appeal.[6] The court did not abuse its discretion in considering County's offered evidence in support of its motion for summary judgment.

## II

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) The Supreme Court set out burdens in motions for summary judgment as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 (*Aguilar*), fns. omitted.)

---

[5] County also responded to Villafana's objections to declarations from other individuals supporting other exhibits. But because Villafana raises only the declaration by County's counsel in his opening brief, we do not address the court's treatment of the other objections here.

[6] On the last page of Villafana's opening brief he claims "that some of [County's] objections were erroneously sustained . . . [¶] [and] that some of [his] objections were erroneously overruled." However, he does not specify which objections he contends the court treated erroneously, apart from referring to all of the objections from each party.

We review de novo a trial court's ruling on a motion for summary judgment. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).) Under this de novo standard, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Ibid.*)

Villafana claims the court erred in granting County's motion for summary judgment because: his claims were timely; he demonstrated triable issues of material fact on his claims for disability discrimination, harassment, retaliation, and failure to prevent discrimination and harassment; County's explanation for its actions was pretextual; his First Amendment rights were violated; County violated FMLA and CFRA; and County is not immune pursuant to section 820.2. We address each contention below.

A. *Timeliness of DFEH Claims*

Villafana argues his DFEH claims are timely. He contends three relevant acts occurred within the statute of limitations period: his medical release, County's failure to accommodate him, and its failure to engage in a good faith interactive process. He also contends his claims that predate the statute of limitations fall within the continuing violation exception.

A plaintiff pursuing a FEHA lawsuit must first file an administrative complaint with DFEH within one year of the alleged wrongful act of employment discrimination. (§ 12960, subd. (d).) Here, Villafana filed his DFEH complaint on November 23, 2009. Thus, any allegations of violations that were more than one year before that date are untimely, including County's October 2008 letter to appellant describing its intent to release him, Villafana's written response a week later, and County's final decision to release him in November 2008. The only County action within the limitations period is the effective date of Villafana's release, on November 24, 2008. Absent an application of the continuing violation exception, all other actions fall outside the limitations period. Under the continuing violation doctrine, "an employer is liable for actions that take place

12

outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1056.)

Villafana claims that his reporting of the incident in 1991, 1996, 1998, 1999, 2000, 2004, and 2008 triggered County's duty to reasonably accommodate his disability and engage in the interactive process, demonstrating a continuing violation within the exception to the limitations period. However, as discussed below, County has no duty to engage in an interactive process when a reasonable accommodation is impossible. (See *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 981 (*Nadaf-Rahrov*).) Similarly, County need not accommodate Villafana if he was unable to perform in any position at the organization, even with an accommodation. (See *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263 (*Jensen*).) Without a violation during the statutory period, the continuing violation exception simply does not apply. (See *Trovato v. Beckman Coulter, Inc.* (2011) 192 Cal.App.4th 319, 326 (*Trovato*).)

In July 2008, Villafana's psychiatrist designated him as unable to work in any position, even on a part-time basis. And in 2009, the same psychiatrist confirmed that Villafana had made no progress. Thus, throughout the limitations period, County was under no obligation to accommodate Villafana or to engage in an interactive process. As a result, any alleged violations before the statutory period cannot be linked to a more recent act, because there was no violation during the statutory period. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812 [finding continuing violation exception applies after "[t]he Court of Appeal correctly concluded that some of [defendant's] misconduct was within the relevant limitations period for FEHA actions"]; *Yanowitz*, *supra*, 36 Cal.4th at p. 1056 [continuing violation exception applies when prior actions "are sufficiently linked to unlawful conduct that occurred within the limitations period"].) Accordingly, the continuing violation exception does not apply.

Nevertheless, Villafana argues that if the prior acts are not actionable, he should at least have been permitted to use them as background evidence in support of his claim. He relies on the Supreme Court's ruling that in Title VII discrimination actions, "the

13

statute [does not] bar an employee from using the prior acts as background evidence in support of a timely claim." (*AMTRAK v. Morgan* (2002) 536 U.S. 101, 113.)[7] However, there is no indication that the trial court prohibited consideration of prior acts as background evidence. In fact, County's separate statement included multiple references to events predating November 24, 2008. Instead, the court held that such acts could not form the basis for a timely DFEH claim, as they fell outside of the statute of limitations. The court's apparent consideration of the acts as background evidence does not conflict with Villafana's claim here. We find no error.

B. *FEHA*

Villafana contends he demonstrated several triable issues of material fact on his FEHA claims. Specifically, he argues County discriminated based on his disability, failed to engage in the interactive process, failed to reasonably accommodate his disability, harassed him, retaliated against him, and failed to prevent harassment and discrimination.

Employment discrimination claims under FEHA are subject to the three-step burden-shifting analysis of *McDonnell Douglas Corp v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*). (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 354-355 (*Guz*).) The employee must first make a prima facie case of wrongful discrimination. (*Ibid.*) "A prima facie case for discrimination 'on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability.'" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.)

The burden then shifts to the employer to rebut the prima facie case by producing admissible evidence that its action was taken for a legitimate, nondiscriminatory reason. (*Guz*, *supra*, 24 Cal.4th at pp. 355-356.) If that is done, the burden then shifts back to the

---

[7] "Our courts frequently turn to federal authorities interpreting Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (Title VII) for assistance in interpreting the FEHA . . . ." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 463.)

employee to raise a triable issue of material fact that the employer's proffered reason was pretextual. (*Id*. at p. 356.) "A defendant's summary judgment motion "'slightly modifies the order of these [*McDonnell Douglas*] showings.'" [Citation.] Consequently, the [defendant] ha[s] the initial burden to either (1) negate an essential element of [the plaintiff's] prima face case [citation] or (2) establish a legitimate, nondiscriminatory reason for terminating [plaintiff] [citation]." (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160.)

Pretext may be shown either directly with evidence """"that a discriminatory reason more likely motivated the employer"""" or indirectly with evidence that """"the employer's proffered explanation is unworthy of credence."""" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68 (*Morgan*).) It is insufficient to show "'the employer's decision was wrong, mistaken, or unwise.'" (*Id*. at p. 75.) The employer's proffered legitimate reasons must be so weak, implausible, inconsistent, incoherent, or contradictory """"that a reasonable factfinder could rationally find them "unworthy of credence,"""""" in order to infer that the employer's decision was not based on them. (*Ibid.*, italics omitted.)

### 1. *Disability Discrimination*

FEHA makes it unlawful to discharge an employee due to mental disability or medical condition. (§ 12940, subd. (a).) Villafana claims County discriminated against him, in violation of FEHA, when it released him on account of his psychiatric disability. Employment discrimination claims under FEHA are subject to the three-step burden shifting analysis outlined above. (*Guz, supra*, 24 Cal.4th at pp. 354-355.) FEHA "'specifically . . . exclud[es] from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties: "This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations . . . ."'" (*Lui v. City and County of San Francisco* (2012)

15

211 Cal.App.4th 962, 970 quoting *Green v. State of California* (2007) 42 Cal.4th 254, 262 (*Green*).)

The parties do not dispute that Villafana suffers from a psychiatric disability. However, Villafana presented no evidence other than his own testimony to indicate that at the time of his release, he was qualified to perform some other, unspecified, job for County that presented "no ethical conflicts." (See *Green*, *supra*, 42 Cal.4th at p. 260 [burden on plaintiff to show he "can perform the essential functions of the job with or without reasonable accommodation"].) To the contrary, multiple physician certifications of his psychiatric disability confirm his inability to work. In July 2008, the certification form required his physician to designate whether the "patient [is] now able to work with reasonable continuity." The physician responded that Villafana was unable to work in "his regular occupation" and "*any* occupation," even on a part-time basis. A second certification in 2009 indicated that Villafana could not work with reasonable continuity for any occupation, and that his progress was "unimproved." From this, the court could reasonably conclude there was no possibility that Villafana was able to return to work. (See *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228 (*Hanson*) [finding physician report prohibiting employee from working jobs requiring wrist dexterity "does not support [employee's] contention that a handbrace would have been a reasonable accommodation, nor does it support [employee's] own after-the-fact, self-serving deposition testimony that handbracing would have been a reasonable accommodation"].) In addition, Villafana had not worked since March 2000. As the Civil Service Commission determined, Villafana did not demonstrate that he was qualified to do his job, or any other job for County. Accordingly, Villafana failed to establish a prima facie case for disability discrimination.

Even were we to assume that Villafana established a prima facie case of discrimination, we find County satisfied its summary judgment burden of establishing a legitimate, nondiscriminatory reason for releasing him from employment. In its notice of intent to release Villafana from employment, County provided six nondiscriminatory

reasons: he had been out of work for at least the past seven years; there was "no suitable position in which [he could] perform satisfactorily"; he met the criteria for total disability; he received long-term disability benefits and was scheduled to continue receiving them until he reached age 65; and he was ineligible for disability retirement. At the trial court, County presented admissible evidence to support these claims, including medical certifications of Villafana's inability to work until retirement. Thus, County effectively rebutted Villafana's prima facie claim of disability discrimination, and satisfied its initial burden at the summary judgment stage.

Villafana claims pretext, but failed to raise a triable issue of material fact to support it. He did not present evidence that he was medically cleared to return to work, other than claiming that he was ready to return. On the other hand, County provided two certifications of Villafana's inability to work just before and after the medical release. In addition, Villafana's absence from the workplace since 2000, along with his disability benefits, further confirms his incapacity to work at County. In short, Villafana presented no evidence, other than his own beliefs, to show that County's stated reasons were untrue, or that it acted with a discriminatory motivation. County was entitled to summary adjudication of Villafana's claim for disability discrimination under FEHA.

### 2. *Failure to Accommodate*

Villafana also claims County failed to accommodate his disability by allowing him to return to work in another position with County that presented "no ethical conflict." He contends County incorrectly believed it had no duty to accommodate him because of his designation as totally disabled.

FEHA requires employers to "make [a] reasonable accommodation for the known physical or mental disability of an . . . employee." (§ 12940, subd. (m).) Under the statute, "a disabled employee is entitled to a reasonable accommodation . . . provided that such accommodation does not impose an undue hardship on the employer." (*Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1338.) An employer defendant can prevail on summary judgment if it shows there was no vacant position within its organization for

17

which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation. (*Jensen*, *supra*, 85 Cal.App.4th at p. 263.)

As we have discussed, Villafana was diagnosed in 2008 as totally disabled through his retirement age. His physician declared him unable to work in his original job and *any* job, even with an accommodation such as part-time work. Because County demonstrated that Villafana was unable to work, it showed that there was no vacant position which he was capable of performing during the statutory period. As a result, County was not obligated to provide Villafana with another employment opportunity within its organization, and thus did not fail to accommodate Villafana.

Villafana relies on *Cleveland v. Policy Management Systems Corp.* (1999) 526 U.S. 795 (*Cleveland*), which held that the different definitions of "disability" in federal laws do not preclude an applicant from receiving Social Security Disability Insurance (SSDI) based on total disability while making a valid claim under the Americans with Disability Act. "[W]hen the [Social Security Administration] determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." (*Id.* at p. 803.) Villafana argues that his classification as totally disabled for purposes of receiving workers' compensation and long-term disability benefits does not mean that he could not return to work with reasonable accommodations. However, in *Cleveland* the Supreme Court held that a "plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." (*Id.* at p. 806.) "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of . . . the earlier statement [of total disability], the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" (*Id.* at p. 807.)

18

Unlike *Cleveland*, Villafana's case involved more than simply a determination of total disability for purposes of receiving disability benefits. As we have discussed, Villafana failed to provide a medical certification that he was capable of returning to work, even after his certification of workers' compensation was no longer needed. At the Civil Service Commission hearing and during the summary judgment motion proceedings, Villafana relied only on his own testimony of his ability to fulfill the essential tasks of a job with County. (See *Hanson*, *supra*, 74 Cal.App.4th at p. 228.) Villafana failed to offer an explanation of his ability to work sufficient to warrant a reasonable jury finding in his favor. Thus, County was entitled to summary adjudication of Villafana's failure to accommodate claim.

### 3. *Good Faith Interactive Process*

FEHA requires employers "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).) In cases where the employer knows of the employee's disability, the employer has an affirmative duty to engage in the process. (*Prilliman v. United Airlines, Inc.* (1997) 53 Cal.App.4th 935, 950-951 ["[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees"].)

"Failure to engage in [the interactive] process is a separate FEHA violation independent from an employer's failure to provide a reasonable disability accommodation, which is also a FEHA violation." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424 (*Wysinger*).) "An employer may

19

claim there was no available reasonable accommodation. But if it did not engage in a good faith interactive process, 'it cannot be known whether an alternative job would have been found.' [Citation.] The interactive process determines which accommodation is required. [Citations.] Indeed, the interactive process could reveal solutions that neither party envisioned." (*Id.* at pp. 424-425.) However, liability for failure to engage in an interactive process only occurs "if a reasonable accommodation was possible." (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 983 ["We conclude that the availability of a reasonable accommodation (i.e., a modification or adjustment to the workplace that enables an employee to perform the essential functions of the position held or desired) is necessary to a section 12940(n) claim"].)

Villafana relies on *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224 (*Claudio*), to demonstrate that the ability to perform the essential functions of a job is not an element of a section 12940, subdivision (n) claim. (*Ibid.* [holding triable issue existed concerning failure to participate in interactive process regardless of whether reasonable accommodation was possible].) He contends County was obligated to engage in the process despite his designation as totally disabled. However, in *Claudio*, the employer had not demonstrated that no reasonable accommodation existed. The court noted "[a]t a minimum, it appears plaintiff may have been physically able to handle clerical positions. Thus, this is not a case (at least not yet) where it can be said an interactive process would have been futile." (*Id.* at p. 249.) By contrast, in this case Villafana was diagnosed as "totally disabled," with no ability to return to work, even in an alternative position or on a part-time basis. His most recent diagnosis of panic disorder in July 2008 confirmed this. The physician indicated Villafana was unable to work in "his regular occupation" and "*any* occupation," even on a part-time basis or in a position involving "no ethical conflicts." As a result, there was no prospect that Villafana could return to work during the statutory period. Without that, County was under no obligation to engage in the interactive process. (See *Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 983.)

20

### 4.     *Harassment*

Villafana contends that County's conduct leading up to and including the medical release amounts to a prohibited form of harassment. Section 12940, subdivision (j)(1) prohibits harassment of an employee based on a physical disability or a medical condition. "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.) Villafana last reported to work in 2000, and has since been absent from the workplace due to medical leave. Without a presence in the workplace since 2000, Villafana cannot show he was harmed by a harassing work environment. As a result, he cannot show harassment during the statutory period, so the continuing violation exception does not apply. (See *Trovato*, *supra*, 192 Cal.App.4th at p. 326.) In light of this conclusion, we need not reach County's other defenses to this cause of action. As a result, County was entitled to summary adjudication of Villafana's harassment claim.

### 5.     *Retaliation*

Villafana contends that his retaliation claim was based on County's 2008 medical release. He argues County's action was motivated by his prior efforts to draw attention to the 1991 abuse incident.

Employers may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden" under FEHA. (§ 12940, subd. (h).) Retaliation claims under FEHA are subject to the same burden-shifting analysis as discrimination claims. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) The employee must first establish a prima facie case of retaliation by showing "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.]" (*Ibid.*) The employer then must offer a legitimate,

21

nonretaliatory reason for the adverse employment action. (*Ibid*.) If it does, the employee must prove intentional retaliation. (*Ibid*.)

A causal link may be established with evidence of the employer's knowledge that the employee engaged in a protected activity and the proximity in time between that activity and the allegedly retaliatory employment action. (*Morgan*, *supra*, 88 Cal.App.4th at p. 69.) Conversely, a lack of proximity may support an inference that the two events are not causally linked, unless the employer's pattern of conduct is consistent with a retaliatory intent. (*Wysinger*, *supra*, 157 Cal.App.4th at p. 421.)

Here, assuming but not deciding that Villafana established the first two requirements for retaliation, he did not show a causal connection between his medical release in 2008 and his efforts to report the 1991 incident in previous years. County presented six reasons for medically releasing Villafana from employment, and none referenced his efforts to bring attention to the abuse. A casual connection over such a long period of time is tenuous at best. In addition, Villafana had been absent from the workplace since 2000, so he could not have experienced retaliation during that time. Finally, as discussed above, any retaliatory actions prior to November 23, 2008 fall outside of the statute of limitations. In particular, Villafana cannot successfully assert that his alleged 2008 reporting of the incident triggered the County's alleged retaliatory release, since that particular reporting occurred after County's notice of intent to release him.

For the same reasons, County has satisfied its burden of providing a legitimate nondiscriminatory reason for his release. As described above, there was sufficient evidence for the court to conclude that County released Villafana due to his prolonged absence from the workplace, incapacity to work, and other nondiscriminatory factors. Thus, County was entitled to summary adjudication of Villafana's retaliation cause of action.

22

6. *Failure to Prevent Retaliation and Harassment*

Villafana contends County failed to prevent discrimination and harassment in violation of section 12940, subdivision (k). But "courts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k). [Citation.]" (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4.) Because we affirm summary judgment on all of Villafana's FEHA causes of action, we also affirm summary judgment on his claim that County failed to prevent discrimination and harassment. (See *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021.)

C. *Title 42 United States Code Section 1983*

Villafana argues in his reply brief that County violated his First Amendment rights under the United States Constitution when it released him, allegedly due to his prior speech about the abuse incident in 1991. In his original complaint, Villafana alleged violations of sections 1981 and 1983 of title 42 of the United States Code, but raises no claim regarding section 1981 on appeal. We treat it as abandoned. (See *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.)

Because Villafana failed to argue a First Amendment violation in his opening brief, we normally would consider it forfeited. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1 ["'A point not presented in a party's opening brief is deemed to have been abandoned or waived. [Citations.]' [Citation.]"].) However, since County addressed the claim on the merits "in an abundance of caution," we briefly resolve it here.[8]

"A claim for retaliation for engaging in protected speech under the First Amendment requires proof that (1) the person was subjected to an adverse action; (2) the

---

[8]     County also addressed a cause of action based on an alleged deprivation of equal protection and due process, which Villafana raised in his original complaint. However, because Villafana did not include the claims in his opening and reply briefs on appeal, we treat them as forfeited. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)

person had engaged in speech that was constitutionally protected because it touched on a matter of public concern; and (3) the protected speech was a substantial motivating factor for the adverse action. [Citation.]" (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 214 (*Lachtman*).)

Here, as in *Lachtman*, we decline to reach the first two elements because Villafana did not show that his statements motivated County's decision to release him. First, his 2008 report occurred *after* County notified him of the medical release. Second, the 2004 report predated County's medical release by four years. Villafana does not succeed in showing County's action was motivated by his prior reports. Furthermore, as we describe above, County's decision to release Villafana was supported by several nondiscriminatory factors. For similar reasons, Villafana's pretext argument fails. Thus, County was entitled to summary adjudication of Villafana's claim based on a violation of his First Amendment rights.

### D.      *CFRA and FMLA*

Villafana argues that had County provided him a reasonable accommodation, and permitted him to return to work, he could have taken time off under CFRA (section 12945.2) and FMLA (29 U.S.C. § 2601 et seq.) due to stress. In his opening and reply briefs, he does not cite to any specific provisions of CFRA or FMLA to support this argument.

CFRA "'is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security.' [Citation.]" (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1253 (*Avila*).) It prohibits employers from denying employee requests for time off for family care and medical leave, under certain circumstances, including when the employee has accrued "at least 1,250 hours of service with the employer during the previous 12-month period . . . ." (§ 12945.2, subd. (a).) Because CFRA is part of FEHA, the procedures governing FEHA claims also apply to CFRA claims. (§ 12960, subd. (a).) Accordingly, in order to bring a claim under CFRA, an employee must file a DFEH complaint within

one year of the alleged unlawful practice. (§ 12960, subd. (d).) Here, Villafana filed his DFEH claim on November 23, 2009, so any alleged FEHA and CFRA violations prior to November 23, 2008 fall outside of the statute of limitations. Since Villafana last reported to the office on March 20, 2000, he does not meet the 12-month service requirement. As a result, no CFRA violations could have occurred within the statutory period. (See *Dobos v. Voluntary Plan Administrators, Inc.* (2008) 166 Cal.App.4th 678 [holding Los Angeles County's termination of allegedly totally disabled employee absent from work did not violate FMLA or CFRA].)

FMLA "provides protections to employees needing family or medical leave similar to those provided by CFRA." (*Avila*, *supra*, 165 Cal.App.4th at p. 1254, fn. 8.) It requires actions to be filed no later than two years after the date of the last event "constituting the alleged violation for which the action is brought." (29 U.S.C. § 2617, subd. (c)(1).) As detailed above, Villafana last reported to work on March 20, 2000. He conceded in his deposition that his claimed FMLA violations occurred in December 2000, well outside of the two-year statute of limitations. County also contends that Villafana's claims here fail because he did not raise the issues in his original DFEH complaint, and he was never denied medical leave in violation of the statutes. Because we find his claims fail for the reasons discussed above, we need not reach these two defenses. County was entitled to summary adjudication of Villafana's CFRA and FMLA claims.

E.    *Public Policy*

Villafana contends his medical release amounts to a wrongful termination in violation of public policy. In his reply brief, he describes the cause of action as "merely a duplication of [his] other FEHA and [f]ederal civil rights claims." Since we find County was entitled to summary adjudication of those claims, there can be no wrongful termination in violation of public policy. Thus, County was entitled to summary adjudication of Villafana's wrongful termination claim as well.

F.     *Governmental Immunity*

County argues it is immune from FEHA and federal civil rights law liability for releasing Villafana from employment pursuant to sections 815.2 and 820.2.  Because we affirm the summary adjudication of Villafana's FEHA and federal claims, we do not reach County's defense of immunity.

## DISPOSITION

The judgment is affirmed.  County is entitled to its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section  6 of the California Constitution.