[No. B119887. Second Dist., Div. Three. Jan. 14, 2000.]

JACK A. CARLTON, Individually and as Administrator, etc., Plaintiff and Appellant., v.
RICHARD L. QUINT et al., Defendants and Respondents.

692

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

## COUNSEL

Law Offices of Kim D. McGuire and Kim D. McGuire for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Rita Gunasekaran and Stephen M. Caine for Defendants and Respondents.

## OPINION

**SCHNEIDER, J.\***—Plaintiff and appellant Jack A. Carlton, individually and as the administrator of the estate of Elizabeth A. Carlton,[1] appeals from a summary judgment granted in favor of defendant and respondent Richard L. Quint and his professional corporation.[2]

Carlton claims the judgment must be reversed because he was not properly served with the motion and did not receive proper notice of the summary judgment hearing. He also contends there is a triable issue of material fact as to every element of his legal malpractice cause of action against Quint. We conclude Carlton's claims that he was not properly served and did not receive proper notice, given the facts of this case, is without merit and that the trial court properly granted summary judgment in favor of Quint.

### FACTUAL AND PROCEDURAL BACKGROUND

This case has, to say the least, a tortured history that spans almost 20 years. Based on the manner in which Carlton opposed Quint's motion for

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Elizabeth Carlton passed away in December 1992. Her interest in this lawsuit is now being pursued by Mr. Carlton, as administrator of the estate. The Carltons are collectively referred to as "Carlton."

[2]Quint's motion was for summary judgment or, in the alternative, for summary adjudication of issues.

summary judgment, it is unnecessary to examine that entire history in microscopic detail. Rather, a sufficient understanding of the facts of this case can be gleaned by examining Quint's separate statement of material facts, *not one of which was disputed by Carlton in his separate statement.*

The facts set forth in Quint's separate statement are as follows:

"1. On July 18, 1996 [*sic*], Jack A. Carlton and Elizabeth Carlton ('plaintiffs') in pro per filed a legal malpractice action against Tyre Kamins Katz & Granof ('TKKG') styled *Jack and Elizabeth Carlton v. Tyre, Kamins, Katz & Granof, a California corporation, Robert C. Aronoff, Peter Appleton, Donald S. Simons and DOES 1 through 100, inclusive*, LASC No. WEC 10 4945. ('the [*sic*] West District Action')." (Original italics.) Although Carlton disputed this allegation, it is clear the dispute related to a nonmaterial typographical error. Specifically, although Quint's undisputed fact asserted that the Carltons filed their malpractice action on July 18, 19*96*, in fact the action was filed on July 18, 19*86*.

"2. The plaintiffs requested the West District Action filing be kept secret pursuant to C.C.P. § 482.05." Carlton did not dispute this fact.

"3. Plaintiffs allege that Richard L. Quint, an individual, and Richard L. Quint, a professional corporation, ('defendants') were retained as legal counsel 'on or about May 11, 1988', twenty-two months after the filing of the West District Action Complaint." This fact was not disputed by Carlton.

"4. Plaintiffs filed a cross-complaint alleging identical causes of action as set forth in the West District Action against TKK&G on or about June 7, 1988 in Case No. C682757, in response to TKK&G's fee complaint against plaintiffs in the Central District (the 'Central District Action')." This fact was not disputed by Carlton.

"5. The cross-complaint in the Central District Action was served on TKK&G on June 6, 1988." This fact was not disputed by Carlton.

"6. The cross-[complaint] in the Central District Action was transferred to the West District on December 7, 1988." This fact was not disputed by Carlton.

"7. Defendants, on behalf of plaintiffs, filed an at-issue memorandum on the cross-[complaint] to the Central District Action on May 11, 1989." This fact was not disputed by Carlton.

"8. Defendants, on behalf of plaintiffs, filed an at-issue memorandum in the West District Action on May 19, 1989." This fact was not disputed by Carlton.

"9. The West District Action was dismissed August 18, 1989." This fact was not disputed by Carlton.

"10. Defendants' Motion to be Relieved as Attorney of Record in the Central District action was granted September 11, 1989." This fact was not disputed by Carlton.

"11. A Status and Trial Setting Conference was set for September 29, 1989 in the Central District Action." This fact was not disputed by Carlton.

"12. Plaintiffs, in *pro per*, request for a continuance was granted on September 29, 1989." (Original italics.) This fact was not disputed by Carlton.

"13. Plaintiffs failed to appear at the Trial Setting Conference on December 1, 1989." This fact was not disputed by Carlton.

"14. The court in the Central District action, based upon plaintiffs' failure to appear at the Trial Setting Conference, issued an order striking the at-issue memorandum." This fact was not disputed by Carlton.

"15. Albert Vogel, Esq. ('Vogel') substituted in as plaintiffs' counsel in the Central District Action on September 12, 1990, twelve months after defendants' court-sanctioned withdrawal." This fact was not disputed by Carlton.

"16. Plaintiffs filed a new at-issue memorandum in the Central District action on April 5, 1991, six months after Mr. Vogel was retained." This fact was not disputed by Carlton.

"17. A trial date was set in the Central District Action for May 4, 1992." This fact was not disputed by Carlton.

"18. Vogel substituted out as counsel in the Central District Action on August 28, 1991, to be succeeded by Jack Carlton, in *pro per*." (Original italics.) This fact was not disputed by Carlton.

"19. Phillip Putnam, Esq. substituted in as counsel in the Central District Action on February 7, 1992, six months after Mr. Vogel's withdrawal." This fact was not disputed by Carlton.

"20. On April 2, 1992, Putnam substituted out as counsel for Jack A. Carlton, who then proceeded in *pro per*." (Original italics.) This fact was not disputed by Carlton.

"21. On April 27, 1992, plaintiffs in the Central District action settled the case for $2,000,000." This fact was not disputed by Carlton.

In addition to the foregoing, Carlton added the additional fact that it was Quint's failure to serve the summons in the West District that caused the case to be dismissed. This assertion is supported by no reference to the record.

*Neither the Method of Service Nor the Notice of the Summary Judgment Hearing Requires Reversal of the Judgment*[3]

 The hearing on Quint's motion for summary judgment was held on January 23, 1998. Carlton claims the motion was not served 28 days before the hearing, as required by Code of Civil Procedure section 437c, subdivision (a). He also claims the proof of service was inadequate (because it did not reveal on whom, where, and when the summary judgment documents were served). He further claims the service could not have been made on December 26, 1998[4] (the date specified in the proof of service) because he was out of California on that date and at all times between December 16, 1997, and January 2, 1998. None of these claims have merit. The trial court found that "service was properly effectuated" in this matter. Although the basis of the court's conclusion is not stated in the record, it may be that the court simply did not believe Carlton's claim that he was out of the state on December 26, 1997. If Carlton was served on December 26, 1997, the statutory mandate that service be made 28 days before the summary judgment hearing was satisfied, given the fact the hearing was held on January 23, 1998—28 days after service.

Even if Carlton was not properly served on December 26, 1997, such service does not, under the facts of this case, require reversal of the

---

[3]Carlton also contends the summary judgment motion was heard less than 30 days before trial, in violation of Code of Civil Procedure section 437c, subdivision (a). Since the summary judgment hearing was held on January 23, 1998, and the trial date was February 23, 1998, this contention is patently without merit. Stated otherwise, the hearing satisfied the statutory requirement since it was held 31 days before the date set for trial.

[4]Carlton meant December 26, 1997.

judgment. The same is true with respect to any alleged defect in the proof of service.[5]

The record in this case reveals that, his claim of inadequate notice and improper service notwithstanding, Carlton filed an opposition to the motion for summary judgment eight days before the hearing. Moreover, Carlton appeared and argued at the summary judgment hearing. At no time did he request a continuance of the summary judgment hearing or contend he was prejudiced by inadequate notice or service. He simply stated that service had not been made in compliance with Code of Civil Procedure section 1011.

"It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective." (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 [119 Cal.Rptr. 835]; see also *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 7-8 [207 Cal.Rptr. 233].)

In *De Luca v. Board of Supervisors* (1955) 134 Cal.App.2d 606, 609 [286 P.2d 395], the court stated that the "general rule is that one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice; it has in such instance served its purpose. This rule applies to one who appears in a lawsuit after defective service of process upon him [citation], to one who responds to a notice of motion without adequate notice [citation]."

In this case, as indicated, despite his claim of inadequate service and notice in his opposition to the motion and at the summary judgment hearing, Carlton *did* file an opposition to the motion, appeared and argued at the hearing, never requested a continuance of the hearing and never claimed prejudice by reason of insufficient notice or service. Under these circumstances, we conclude Carlton waived any claim of inadequate service or notice assuming, without deciding, that claim had any merit.

This court understands the dilemma faced by an attorney who claims his client was not properly served with motion papers and/or that inadequate notice of the hearing was received. If counsel is convinced his or her legal

---

[5]In view of the authority cited below, the court finds it unnecessary to determine if there were technical defects in the proof of service.

position is correct, he or she may appear at the hearing without filing a response to the motion and request a continuance for the purpose of preparing a proper response. If counsel makes a complete record relating to both the defective service and/or inadequate notice and the inability to prepare a proper response, and the court denies the continuance, the record will be well preserved for any future writ proceeding or appeal.

If counsel is unwilling to take the chance that a continuance will be granted, he or she should file the best opposition possible under the circumstances. The opposition should include counsel's position on the defective-service/inadequate-notice issue, as well as the merits. The opposition should contain a complete discussion of counsel's position as to why a more complete opposition was not able to be filed (e.g., because the defective notice of motion did not give counsel adequate time to prepare a response). Counsel should then appear at the hearing, object to the hearing taking place because the service was defective and/or inadequate notice of the hearing was received; again explain to the court the prejudice that has been suffered by reason of the defective service and/or inadequate notice; and request a continuance of the hearing so that a proper response to the motion may be filed. Obviously, if the court denies a continuance, counsel should be prepared to argue the motion on the merits. If, however, the steps described in this paragraph are taken, the record will be well preserved for any future writ proceeding or appeal.

None of these steps were taken by Carlton in this case. Although he did raise the issue of inadequate service in his opposition and at the summary judgment hearing, he nevertheless filed a response to the motion for summary judgment, never claimed he did not have adequate time to prepare a response, appeared at the hearing, argued the merits, never requested a continuance, and never claimed he was prejudiced by the defective service or inadequate notice of hearing. As stated, under these circumstances, we conclude Carlton waived any alleged defective service or inadequate notice.

*The Trial Court Properly Granted Quint's Motion for Summary Judgment*

It is well established that a defendant moving for summary judgment or summary adjudication "has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the [plaintiff's] cause of action . . . *cannot be established* . . . ." (Code Civ. Proc., § 437c, subd. (o)(2), italics added; see also *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 585 [37 Cal.Rptr.2d 653].) Once the

moving defendant has established this obligation, the burden shifts to the plaintiff to demonstrate a triable issue of material fact as to the existence of the element or elements challenged by the defendant. (Code Civ. Proc., § 437c, subd. (o)(2); *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at p. 590.) To do so, the plaintiff may not rely upon the "mere allegations . . . of its pleadings" and instead must show by "specific facts" that the requisite triable issue of material fact is present. (Code Civ. Proc., § 437c, subd. (o)(2).) ■ This court reviews de novo a grant of summary judgment by the trial court. (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855 [70 Cal.Rptr.2d 595].)

■ "In order to establish a cause of action for legal malpractice the plaintiff must demonstrate: (1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a proximate causal connection between the negligent conduct and the resulting injury; and (3) actual loss or damage resulting from the negligence. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)" (*Thompson* v. *Halvonik* (1995) 36 Cal.App.4th 657, 661 [43 Cal.Rptr.2d 142].) ■ The issue presented in this case is whether Quint, in his motion, showed that one or more elements of Carlton's legal malpractice cause of action could not be established, thereby shifting the burden to Carlton to demonstrate a triable issue of material fact existed as to those elements. If Quint's motion was sufficient to shift the burden to Carlton, it is clear the trial court's grant of summary judgment must be upheld since Carlton presented *no* evidence in response to the motion.

The essence of Carlton's legal malpractice action against Quint is based on the following syllogism: (i) Quint was negligent in failing to have the West District Action served within the statutorily required two years (Code Civ. Proc., § 583.420), thereby resulting in the dismissal of that action; (ii) as a consequence of Quint's negligence, Carlton was damaged because he had to wait until April 1992 to have his malpractice claims resolved; (iii) had the West District Action been properly pursued by Quint, it would have been required to go to trial by July 18, 1991 (the date the five-year statute, Code Civ. Proc., § 583.310, would have run); and (iv) as a result of having to wait an additional nine months (from July 19, 1991, to April 27, 1992), Carlton lost interest on the $2 million settlement achieved in April 1992 and "due to their financial condition and lack of resources, [Carlton] . . . [was] required to accept the settlement rather than try the case and therefore lost the higher judgment of $11 million they would have won." A careful examination of Carlton's position demonstrates it is patently without merit.

As noted, the foundation of Carlton's argument is that had the West District Action not been dismissed due to Quint's negligent failure to have

the summons and complaint timely served, that case would have gone to trial no later than July 18, 1991. Since the Central District Action was not resolved until April 27, 1992, Carlton argues the nine-month delay caused by Quint's negligence resulted in damages to them. The problem with Carlton's argument is that it is based on sheer speculation and not supported by the record.

The evidence submitted by Quint showed that the West District Action was dismissed in August 1989, and that the Central District Action proceeded until it was resolved in April 1992, with Carlton receiving a $2 million settlement. Since Carlton and Quint agree the malpractice allegations contained in the West District Action and the Central District Action cross-complaint were virtually identical, Quint's proof showed that there was no basis for concluding the relief obtained by Carlton in the Central District Action was any different than the relief that would have been obtained in the West District Action and, therefore, that Quint's conduct (of negligently failing to cause the West District Action to be served) caused no damage to Carlton. Stated otherwise, Quint's proof showed Carlton could not establish two elements of his cause of action, i.e., that Quint's conduct caused him damage. Accordingly, the burden shifted to Carlton to prove Quint's conduct caused such damage. Since Carlton submitted no evidence in opposition to Quint's motion, it is clear Carlton failed to sustain his burden of proof.

Initially it must be observed that Carlton's assertion, unsupported by any evidence, that the West District Action would have come to trial by July 18, 1991 (the date the five-year statute would have run in that action) is pure fantasy. Some cases are brought to trial before the five-year statute runs; others are not. Carlton's unsupported factual assertion that the West District Action would have come to trial before the five-year statute ran is pure speculation.

Moreover, Carlton presented no evidence that the West District Action would have been *ready* to be tried by July 19, 1991. In fact, the evidence is to the contrary. Specifically, when the West District Action was dismissed in August 1989, the Central District Action, which presented the same legal malpractice claims contained in the West District Action, remained pending and viable. The fact is, however, that although the at-issue memorandum was filed in the Central District Action in May 1989 (the same month the at-issue memorandum was filed in the West District Action), that case was nowhere near ready to be tried by July 18, 1991. The evidence reveals that the cause of this lack of readiness was Carlton's own conduct.[6] Specifically:

---

[6]Since *Quint had substituted out of the Central District Action in September 1989, none of the delay in bringing that action to trial was attributable to him.*

1. On September 29, 1989, Carlton (who was then in propria persona because Quint had been relieved) asked for a continuance of the status and trial setting conference. This request was granted and the conference was continued to December 1, 1989.

2. On December 1, 1989, Carlton failed to appear at the status and trial setting conference and his at-issue memorandum was ordered stricken.

3. Carlton did not obtain new counsel (Vogel) until September 12, 1990, one year after Quint had been relieved.

4. A new at-issue memorandum was not filed by Vogel until April 5, 1991, six months after he was retained.

Based on the above events alone, it is clear the Central District Action was in no condition to be tried by July 1991. In fact, a trial date was not set in the Central District Action until May 4, 1992. Carlton's contention that the West District Action, which presented the same claim, would have gone to trial before July 1991 is fanciful.

Additionally, the events that occurred after April 1991 reveal the Central District Action would not have been ready to be tried before some time in 1992, at the earliest. Specifically, on August 28, 1991, Vogel was substituted out as Carlton's counsel, the latter again assuming a propria persona status. It was not until February 1992 (six months later) that Carlton obtained new counsel. That counsel stayed in the case for less than two months, at which time Carlton again assumed propria persona status. These events reveal that, by April 1992, the Central District Action neither had been tried nor was apparently ready for trial.

In sum, after the burden shifted to Carlton, he presented *no* evidence to show that even if the West District Action was dismissed because Quint negligently failed to have it served, Quint's negligence was the cause of any damage to Carlton. This conclusion follows because Carlton failed to prove the predicate of his damage claim·against Quint, i.e., that the West District Action, if not dismissed, would have gone to trial by July 1991. Since Quint's evidence successfully negated two elements of Carlton's legal malpractice cause of action—causation and damages—and since Carlton failed to present *any* evidence to prove material issues of fact remained to be tried on these two elements, it is patent the trial court's grant of summary judgment was correct.

The judgment is affirmed.

Croskey, Acting P. J., and Kitching, J., concurred.

On February 2, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 29, 2000.