Filed 11/5/15  Arnold v. Toole CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GAIL ARNOLD, | D067317 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2014-00035681-CU-HR-CTL) |
| TIMOTHY TOOLE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Frederick A. Mandabach, Judge.  (Retired Judge of the San Bernardino Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Erik A. Friss for Defendant and Appellant.

Gail Arnold, in pro. per., for Plaintiff and Respondent.

The trial court granted Gail Arnold's request for a civil harassment restraining order against Timothy Toole under Code of Civil Procedure section 527.6.[1]  On appeal,

---

1    All further statutory references are to the Code of Civil Procedure.

Toole contends his due process rights were violated because Arnold did not personally serve him with the declaration supporting her restraining order petition. Toole also claims the restraining order unconstitutionally hinders his free speech rights. We reject these contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts in the light most favorable to the court's findings. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 787.)

Arnold and Toole are neighbors who live in two duplexes separated by about six feet of space. For unknown reasons, Toole would periodically yell obscene and threatening words at Arnold. On several occasions, Toole yelled at Arnold, "you're a fucking whore"; "suck my dick"; "asshole, asshole, asshole, asshole"; and "bitch." In one instance, Toole yelled at a neighbor that he had a gun. Another time, while Toole was watering his front yard with a hose, he screamed at Arnold: "I'm standing here with a hose in my hand and you're only [10] feet from me--you know, I could kill you right now." Toole would sometimes follow and confront Arnold and other neighbors with a video camera, trying to provoke them into saying something. He also posted flyers on cars in the neighborhood, which depicted him confronting angry neighbors.

In response to this conduct, Arnold moved for a temporary restraining order (TRO) under section 527.6. After the court granted the motion, Arnold served Toole with the TRO and notice of the court hearing date for a permanent restraining order.[2]

Both Arnold and Toole appeared at the permanent restraining order hearing. At the outset of the hearing, the court noted that Arnold's proof of service showed Toole was personally served with the TRO and the notice of the hearing, but did not show the petition was personally served on Toole. The court advised Toole he was entitled to notice of the allegations and an opportunity to be heard, and the matter could be continued if he desired. The court also directed the parties to exchange any documents or evidence upon which they intended to rely. In response, Arnold gave Toole a copy of her declaration that had accompanied her petition. Toole then indicated he was ready to proceed and raised no objection to notice or the service, and did not ask for a continuance.

During the hearing, Toole fully presented his version of the facts at length. Toole claimed that during the relevant time he was performing construction work in the front of his duplex. He said that while he worked, he liked to listen to music on his headphones and loudly sing along. Any words he shouted were merely the lyrics of songs, and were not directed at Arnold. Toole denied that he had ever claimed to have a gun or ever threatened to kill Arnold.

---

[2]    We deny Arnold's motion to augment the record with additional service documents. The motion is untimely and the proposed augmented documents were not before the trial court in this matter.

3

After hearing the evidence, the court found that Arnold had proven her case by clear and convincing evidence and granted her motion for a three-year restraining order. The order prohibited Toole from engaging in the following activities: "Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit abuse, destroy personal property of , or disturb the peace of the person. . . ." The order also prevented Toole from contacting Arnold in person, by telephone, or in writing. The order required Toole to stay at least five feet away from Arnold while she was at her residence, and 100 yards from Arnold when she was away from her residence.

## DISCUSSION

### I.     *Due Process*

Toole contends that his due process right to notice was prejudicially violated because he was not served with Arnold's declaration in advance of the hearing.

Due process requires that all parties receive notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action." (*Mullane v. Central Hanover Bank & Trust Co*. (1950) 339 U.S. 306, 314.) Section 527.6 requires that respondents in permanent restraining order cases be served with a copy of the petition for the restraining order, the temporary restraining order, and the notice of hearing of the petition. (§ 527.6, subd. (m).)

Toole contends Arnold violated this statute and his due process rights because he was not served with Arnold's declaration. However, Toole received a copy of the declaration at the outset of the hearing. The court specifically informed Toole of his right to notice and that the court would grant a continuance if requested. Nevertheless, Toole

4

stated he was ready to proceed. By failing to object to the claimed defect in service and by failing to request a continuance, Toole waived his right to raise the issue on appeal.[3]

A party who claims inadequate notice, but appears at the hearing on the motion and contests it on the merits is deemed to have waived the issue unless he or she raises a specific objection and establishes prejudice. (*Arambula v. Union Carbide Corp*. (2005) 128 Cal.App.4th 333, 342-343; *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697-698 (*Carlton*); *Farrar v. McCormick* (1972) 25 Cal.App.3d 701, 705.) "The principal purpose of the requirement to file and serve a notice of motion . . . is to provide the opposing party adequate time to prepare an opposition." (*Arambula*, at p. 343.) "Courts applying the waiver rule generally have concluded that the party's appearance at the hearing and opposition on the merits showed that the notice 'served its purpose,' despite any defect [citations], and that any defect in the notice did not prejudice the party's preparation for the hearing and opportunity to be heard. [Citations.]" (*Ibid*.)

Toole recognizes these rules, but now argues his failure to object to the notice should be excused because he was not represented by counsel at the hearing. The argument is without merit. Toole's pro per status at the proceeding does not shield him from the waiver doctrine. (*Taylor v. Bell* (1971) 21 Cal.App.3d 1002, 1009 ["A lay

---

3     In civil cases, the waiver rule applies equally to constitutional and nonconstitutional rights. (*Fleming v. Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 43 ["The general rule applicable in civil cases is that a constitutional question must be raised at the trial level to preserve the issue on appeal."].) In particular, courts have frequently enforced waivers of the due process right to notice. (See, e.g., *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.* (1972) 405 U.S. 174, 187; *National Equipment Rental, Limited v. Szukhent* (1964) 375 U.S. 311, 316; *Doty v. Love* (1935) 295 U.S. 64, 74.)

person . . . who exercises the privilege of trying his own case must expect and receive the same treatment as if represented by an attorney -- no different, no better, no worse."].)

Further, even if Toole had not waived his due process notice right, he was not prejudiced by the claimed inadequate service. The record shows Toole had sufficient notice before the hearing to prepare his case. During the proceeding, he presented a coherent story contravening Arnold's version of the facts. After considering Toole's complete presentation, the court found Arnold's version of the facts to be more credible under the rigorous clear and convincing evidence standard. On this record, there is no reasonable basis to conclude that Toole's defense would have been different if he had received a copy of the declaration in advance of the hearing.

In sum, Toole "never claimed he did not have adequate time to prepare a response, appeared at the hearing, argued the merits, never requested a continuance, and never claimed he was prejudiced by the defective service or inadequate notice of the hearing." (*Carlton*, *supra*, 77 Cal.App.4th 698.) Under these circumstances, Toole waived the claimed defective service and did not suffer prejudice.

## II. *Free Speech*

Toole contends the restraining order is a prior restraint on speech, and prior restraints bear a heavy presumption against constitutional validity. He asserts that, unless his speech falls under the "fighting words" or obscenity exceptions to free speech, the restrictions are unconstitutional. He contends that his speech does not fall under either exception.

Toole misstates the free speech standard for restraining order cases. To determine whether a content neutral restriction on speech violates the First Amendment of the United States Constitution, courts consider whether the restriction burdens any more speech than necessary to serve a significant government interest. (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 765.) Speech on matters of purely private concern receives less stringent protection than speech concerning public issues. (*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc* (1985) 472 U.S. 749, 758-759.)

"In California, speech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1250 (*Huntingdon*).) Section 527.6 "[h]arassment" encompasses, as was found here, "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).)

The restraining order in the present case restricts Toole's conduct without reference to the content of his speech. It contains only the standard provisions barring Toole from harassing, attacking, striking, stalking, or threatening Arnold. Thus, the order is content neutral.

The order also serves a significant government interest. Section 527.6 is intended " ' "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution." ' " (*Huntingdon*, *supra*, 129 Cal.App.4th at p. 1250, quoting *Russell v. Douvan* (2003) 112 Cal.App.4th 339, 403.) The prevention of

7

harassment is an especially important government objective when it involves activities surrounding a residence. (*Carey v. Brown* (1980) 447 U.S. 455, 471.)

The injunction did not burden speech any more than necessary to serve this significant governmental interest. Instead, it merely bars Toole from engaging in a type of conduct that is illegitimate under California law. (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1410 [Holding that song lyrics, if used to harass and ridicule, are not protected speech.]; *Huntingdon*, *supra*, 129 Cal.App.4th at p. 1250.) Because the content neutral restraining order is no broader than necessary to serve a significant government interest, it does not violate Toole's First Amendment rights.

## DISPOSITION

The order is affirmed. Appellant to bear respondent's costs on appeal.

PRAGER, J.[*]

WE CONCUR:

HALLER, Acting P. J.

McDONALD, J.

_____

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8