Filed 10/21/24  Marriage of Thompson CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of PAUL and SHELLY THOMPSON. _____ PAUL THOMPSON,<br><br>Respondent,<br><br>v.<br><br>SHELLY THOMPSON,<br><br>Appellant. | B332150<br><br>(Los Angeles County Super. Ct. No. VD072834)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 24, 2024, be modified as follows:

1.      On page 1, the one-word sentence "Affirmed" is changed to read:

Affirmed in part and reversed in part.

2.	On page 2, the final sentence of the first paragraph, which reads, "We affirm" is deleted and the following sentences are inserted in its place:

> We conclude the court erred in imposing the $10,000 sanctions against Paul because the award was untethered to his attorney fees and costs.  We therefore reverse the June 14, 2023 order to the extent it imposes this award and otherwise affirm the order.

3.	On page 14, the first sentence under subsection A, beginning "Family Code section 271 authorizes an award of attorney fees" is modified to add the words "and costs" so the sentence reads:

> Family Code section 271 authorizes an award of attorney fees and costs as a sanction where a party's conduct "frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."

4.	On pages 15 through 17, the headings and texts of subsections B and C are deleted in their entirety and replaced with the following subsection B only:

> **B.	Sanctions Award Was Not Tethered to Attorney Fees and Costs**
>
> We agree with Shelly's contention the $10,000 in sanctions awarded to Paul must be reversed.  The language of Family Code section 271, subdivision (a) is plain—

2

sanctions available under the statute are limited to attorney fees and costs. (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 350.) A party seeking relief under Family Code section 271 need not show harm as a prerequisite to a sanctions award. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1480.) However, the award must be "tethered to attorney fees and costs." (*Menezes,* at p. 351.) Nothing in the record indicates the $10,000 award of sanctions was so tethered. We do not conclude that Shelly's conduct did not "frustrate the policy of the law to promote settlement of litigation" and that Paul did not incur significant attorney fees and costs as a result. But there is no evidence provided to the family court that would allow us to tie Paul's $10,000 award to any of those fees and costs. Indeed, the family court decided upon the figure of $10,000 based upon what it felt was "appropriate," "guessing" the attorney fees incurred to date "are north of 100,000 [dollars] start to finish." Because we conclude the $10,000 in sanctions awarded to Paul is invalid on this ground, we do not reach Shelly's other challenges to the sanctions award.

5.     The DISPOSITION on page 18 is modified to read as follows:

> The $10,000 award of sanctions to respondent Paul Thompson in the June 14, 2023 order is reversed; otherwise, the order is affirmed. The parties are to bear their own costs on appeal.

3

Shelly's petition for rehearing is denied.

This modification changes the judgment.


LUI, P. J.        ASHMANN-GERST J.        CHAVEZ, J.

Filed 9/24/24  Marriage of Thompson CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of PAUL and SHELLY THOMPSON. _____ PAUL THOMPSON,     Respondent,     v. SHELLY THOMPSON,     Appellant. | B332150 (Los Angeles County Super. Ct. No. VD072834) |

APPEAL from postjudgment orders of the Superior Court of Los Angeles County, James E. Horan, Judge.  Affirmed.

Decker Law, James D. Decker and Griffin R. Schindler for Appellant.

Paul Thompson, in pro. per., for Respondent.

_____

Shelly Thompson believed she was being overcharged by the court-appointed counsel representing her minor child in a custody dispute with her former husband, Paul Thompson. [1] Shelly attempted to initiate nonbinding fee arbitration under the Mandatory Fee Arbitration Act (MFAA), Business and Professions Code section 6200 et seq. The family court concluded the MFAA was inapplicable in this instance and refused to stay the proceedings for MFAA arbitration with the Los Angeles County Bar Association. The court awarded appointed counsel the overdue attorney fees and sanctioned Shelly under Family Code section 271. Shelly challenges both rulings on appeal. We affirm.

## BACKGROUND

The marriage of Paul and Shelly Thompson was dissolved by a judgment entered in 2015. By November 1, 2018, the parties were embroiled in a "High Conflict" custody dispute over their minor child. On that date, the family court appointed Marie Koestner, a family law attorney, to represent the minor child. The court reviewed the parties' most recent income and expense declarations and ordered Paul and Shelly to share equally (50–50) the costs and fees for Koestner's representation of their minor child. Neither party objected.

**Disputed Attorney Fees and MFAA Arbitration Demand**

A. **Events Leading Up To and Including the Fee Dispute**

Shelly represented herself at a February 21, 2023 custody hearing. At the conclusion of the hearing, Attorney Koestner

---

[1] For simplicity and clarity, the first names of the parties are used in this opinion.

requested the family court to order Shelly to pay her outstanding attorney fees "forthwith." Koestner would then resume billing Shelly monthly. To date, Shelly's unpaid accumulated fees amounted to approximately "6,000." Koestner reminded the court that Shelly's Income and Expense Declaration indicated she had $40,000 in cash and $600,000 in property value.

In response, Shelly acknowledged to having shown her liquid assets were $40,000. Shelly then explained she also had to pay her former counsel. The family court told Shelly she "can't pick and choose" and ordered Shelly "to bring [Attorney Koestner's] bill current forthwith." Shelly did not object to the amount of the fees or challenge the nature of the legal services rendered as being unreasonable.

On April 13, 2023, Attorney Koestner filed a request for an order (RFO) compelling Shelly to pay $7,670.50 in legal fees. In her supporting declaration, Koestner averred she was the court-appointed attorney for the parties' minor child, whom she represented at all stages of the custody proceedings through the last scheduled hearing on February 21, 2023. Following her November 1, 2018 appointment, Koestner sent Shelly and Paul a letter requesting an initial retainer of $1,000, which they both paid. Koestner also informed the parties she would billing at an hourly rate of $300 for her work on this matter. As of April 13, 2023, the total bill was $41,191, for which Paul and Shelly were to each pay half ($20,595.50). Paul fully paid his share of legal fees. Shelly did not.

Attorney Koestner further testified she mailed monthly billing statements to both parties. Over time, Shelly insisted she had not received the statements, which had been sent to her confirmed mailing address. At Shelly's request, Koestner

thereafter began e-mailing Shelly her continuously accruing and updated billing statements. Shelly's bill remained unpaid for months. Koestner then agreed to a payment plan in which Shelly was to make $500 monthly payments on the balance due.

Attorney Koestner averred Shelly made no payments from November 27, 2019, through June 10, 2020. When Koestner requested payment, Shelly resumed making $200 to $250 payments from June 10, 2020, through May 31, 2022. From May 31, 2022, through August 29, 2022, Shelly again ceased making payments. In response to another request by Koestner, Shelly resumed making payments on August 29, 2022, through January 31, 2023, but in the amount of $100 per month with one payment of $250.

Attorney Koestner testified Shelly repeatedly sought itemized statements of Koestner's charges before making a payment. In response, Koestner provided complete itemized statements to Shelly on numerous occasions. Koestner stated: Shelly "never indicated any dispute of the charges that were incurred during the reflected billing periods."

Attorney Koestner's declaration related that she received from Shelly a $500 payment on March 1, 2023, notwithstanding the family court's February 21, 2023 order that Shelly pay in full all outstanding charges. Koestner then agreed to delay Shelly's payment until March 10, 2023, because of the illness of Shelly's mother.

Attorney Koestner testified that in a March 13, 2023 e-mail, Shelly disputed for the first time Koestner's charges for

4

eight 2019 court appearances and a 2019 transcript fee.[2]  Shelly also insisted that Koestner provide proof of Paul's payment of his share of attorney fees.  Subsequent telephone conversations with Shelly proved fruitless, the outstanding bill remained unpaid, and Shelly continued to contest the charges.  Paul owed Koestner no unpaid attorney fees.

### B.    Shelly's Attempts To Compel Arbitration

In an e-mail to Attorney Koestner, apparently dated March 20, 2023, Shelly wrote that if their fee dispute could not be resolved informally, her "legal advisor" suggested she had a right to MFAA arbitration.

In an April 26, 2023 letter to Koestner, Shelly offered to settle their fee dispute for $1,500 and stated her intention to request MFAA arbitration if her offer were rejected.

On May 19, 2023, Shelly e-mailed Koestner that:  (1) she had received Koestner's notice of the RFO hearing to her "horror and surprise"; (2) their fee dispute would not be litigated in superior court, but arbitrated instead by the Los Angeles County Bar Association; and (3) Koestner had two days to withdraw her RFO filing to avoid arbitration.

On May 24, 2023, Shelly submitted a "Client Petition for Arbitration" to the Los Angeles County Bar Association.  Shelly purportedly served Koestner with notice of the arbitration.

### C.    Shelly's Efforts to Stay Proceedings

On June 1 and 7, 2023, the superior court clerk received, but did not file, Shelly's notice and amended notice of stay of the

---

[2] The record shows in the same e-mail Shelly contested fees charged for an additional six court appearances made from 2020 through 2023.

family court proceedings to allow MFAA arbitration. The RFO hearing remained on calendar.

### D. RFO Hearing and Family Court's Ruling

A hearing on Attorney Koestner's RFO was set for May 31, 2023, but rescheduled at Koestner's request to June 14, 2023. The same day, Paul filed points and authorities arguing the MFAA did not apply and the family court determines Koestner's attorney fees. Shelly, acting in propria persona, filed opposition contending the proceedings must be stayed for MFAA arbitration of the fee dispute.

Following argument by counsel for Paul and Koestner and by Shelly, representing herself, the family court: (1) denied Shelly's demand for a stay of proceedings, concluding the MFAA is inapplicable, (2) found Shelly owed Koestner $5,880 in past due attorney fees, (3) found Shelly was obligated to pay $4,250 in attorney fees related to Koestner's RFO, (4) ordered Shelly to pay a total of $10,130 in attorney fees "forthwith" to Koestner, and (5) ordered interest to begin to accrue 30 days from the date of the order if the fees owed to Koestner were not paid in full.

The order was entered on August 2, 2023. Shelly timely appealed.

## DISCUSSION[3]

### I. Mandatory Fee Arbitration Act

The MFAA, Business and Professions Code, sections 6200 et seq., was enacted in 1978.[4] (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983.) The legislation was intended "to provide an

---

[3] Attorney Koestner has not participated in this appeal.

[4] Statutory references are to the Business and Professions Code unless otherwise indicated.

6

effective, expeditious, simple, low cost forum in which an attorney and a client may resolve a dispute over legal fees." (Hargarten & Ardisson, *Fine Tuning California's Mandatory Attorney Fee Arbitration Statute* (1982) 16 U.S.F. L.Rev. 411, citing State Bar of California, *Report of the Special Committee on Resolution of Fee Disputes* (Apr. 29, 1976).)

The MFAA is an arbitration scheme separate and distinct from the generally applicable California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and has its own rules and limitations: The MFAA applies solely to contested attorney fees and/or costs; the obligation to arbitrate derives from statute not from contract; arbitration under the statute is voluntary for the "client" and mandatory for the attorney; and the arbitration award is nonbinding, with each party having the right to demand a trial de novo. (*Aguilar v. Lerner*, *supra*, 32 Cal.4th at pp. 983–985.) The arbitration is conducted by local bar associations under the MFAA. (Bus. & Prof. Code, § 6200, subd. (d); *Aguilar v. Lerner*, at p. 984.)

## II.   MFAA Does Not Apply Here

Contrary to Shelly's contention, her fee dispute with Attorney Koestner does not qualify for arbitration according to section 6200 et seq.

### A.   The Standard of Review and Rules of Statutory Construction

Whether the MFAA applies here, as Shelly contends, is a question of law, subject to our independent review. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25.) As our primary task is to determine the Legislature's intent, we first look to the plain meaning of the statute's language. Where the language is clear, we need go no further. Where the language is open to

7

multiple reasonable constructions, we consider the statute's legislative history. (*Valdez v. Costco Wholesale Corp.* (2022) 85 Cal.App.5th 466, 472.)

## B. Attorney Koestner's Fees Were Determined by Statute and Court Order

Not all attorney fee disputes are subject to MFAA arbitration. Section 6200 excludes from its provisions "[d]isputes where the fee or cost to be paid by the client or on the client's behalf has been determined pursuant to statute or court order." (§ 6200, subd. (b)(3).) The family court concluded this exception precluded Shelly from invoking MFAA arbitration. Based on our statutory construction of that exception and the relevant Family Code provisions, we agree.[5]

Family Code section 2010 provides: "In a proceeding for dissolution of marriage . . . the court has jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning . . . [¶] . . . the award of attorneys' fees and costs." (Fam. Code, § 2010, subd (f).) In addition, the Family Code and related California Rules of Court together promulgate a comprehensive scheme of provisions specifically

---

[5] Shelly initially argues, while the term "client" is not defined in sections 6200 et seq., as the "payor" of her minor child's attorney fees, she is the client for purposes of the MFAA. (Citing *Wagner v. Mirzayance* (1998) 67 Cal.App.4th 1187, 1190 ["When the attorney is retained by one person to provide legal services to another, the one who has agreed to pay the lawyer's bills is the one entitled to arbitrate any fee dispute"].) We do not decide whether this holding applies equally to appointed counsel in this situation because we conclude Shelly's fee dispute is excluded by section 6200, subdivision (b)(3).

governing the family court's discretionary authority over the appointment of counsel for a minor child and payment of appointed counsel's fees:  Family Code section 3150 authorizes the court to appoint private counsel to represent the interests of a minor child in a custody or visitation proceeding if the court determines that such an appointment would be in the child's best interest.  (Fam. Code, § 3150, subd. (a).)  A 2010 amendment to that provision states "the court and counsel" must "comply with the requirements set forth in Rules 5.240, 5.241, and 5.242."[6]  (Stats. 2010, ch. 352, § 14.)  Rule 5.240 states what factors are to be considered in appointing counsel, who may seek the appointment, and what "must" and "may" be specified in an appointment order.  (Rule 5.240.)  "Counsel's rate or amount of compensation" may be included in the orders.  (Rule 5.240(c)(2)(E).)

Rule 5.241 and Family Code section 3153 address the payment of fees for the minor child's appointed counsel.  Counsel so appointed is entitled to "a reasonable sum for compensation and expenses, the amount of which shall be determined by the court."  (Fam. Code, § 3153, subd. (a).)  That sum must "be paid by the parties in the proportions the court deems just."  (*Ibid.*)  Subdivision (b) of section 3153 provides:  "Upon its own motion or that of a party, the court shall determine whether both parties together are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this chapter, and the portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county."  Similarly, rule 5.241

_____

[6] All references to rules are to the California Rules of Court.

9

provides the "court must determine the reasonable sum for compensation and expenses for counsel appointed to represent the child in a family law proceeding, and the ability of the parties to pay all or a portion of counsel's compensation and expenses." (Rule 5.241.) Finally, rule 5.242 addresses the qualifications, rights, and responsibilities of appointed counsel.

Further, we read Family Code section 3153 as allowing the family court authority to revisit the parties' abilities to pay the attorney fees of their minor child's appointed counsel, whether at the request of either party or on its own motion. (Fam. Code, § 3153, subd. (b).) No time limits are indicted within which the court or the party shall bring such a motion. Nor does the statute state the court's original allocation shall not be reconsidered even if there are changed circumstances.

The plain language of Family Code section 3153 evinces the clear legislative intent, buttressed by the related Rules of Court, that fees for a minor child's appointed counsel are to be paid either by the parties or by the county, the family court has a duty to determine and award such fees, appointed counsel has a vested right to receive reasonable compensation for legal services rendered, and the court retains jurisdiction to reconsider issues concerning the amount and allocation of the attorney fees. (See *In re Marriage of Lisi* (1995) 39 Cal.App.4th 1573, 1576.) In other words, fees for appointed counsel in child custody cases are determined by both statute and court order.

In this case, after appointing Attorney Koestner, the family court complied with Family Code section 3153 and related Rules of Court by (1) evaluating the ability of the parties to pay Attorney Koestner's legal fees based on their respective Income and Expense Declarations; (2) deciding, without objection, that

10

each party was to pay half of Koestner's total fees; and (3) ordering Shelly to pay her outstanding share of attorney fees in February 2023.  Thus, Koestner's fees were determined by both statute and by court order under section 6200, subdivision (b)(3).  Shelly was not entitled to resolve her fee dispute by MFAA arbitration.

Shelly resists this conclusion by relying chiefly on *Aerotek, Inc. v. Johnson Group Staffing Co., Inc.* (2020) 54 Cal.App.5th 670 (*Aerotek*).  In *Aerotek,* the plaintiff sued the defendant for misappropriation of trade secrets by soliciting the plaintiff's customers and hiring one of the plaintiff's employees.  (*Id.* at pp. 672–673.)  Years of litigation ensued, the defendant suffered severe financial losses, and defense counsel moved to withdraw for nonpayment of legal fees.  (*Id.* at p.673.)  The defendant and counsel then agreed in writing that the defendant would pay counsel's costs but not legal fees, with an added footnote to the agreement that should the defendant be awarded fees in the future, all fees were reimbursable to counsel and the waiver would not apply.  (*Ibid.*)  After two jury trials, the defendant ultimately prevailed.  (*Aerotek*, at p. 674.)

Defense counsel moved for attorney fees under Civil Code section 3426.4, which allows the recovery of attorney fees for bad faith claims under California's Uniform Trade Secrets Act.[7] (*Aerotek, Inc. v. Johnson Group Staffing Co., Inc., supra,* 54 Cal.App.5th at pp. 674–675.)  Counsel argued statutorily

---

[7] Civil Code section 3426.4 provides in part:  "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party."

11

awarded fees are presumptively vested in the attorney and the parties' fee agreement supported counsel's entitlement to the fees. (*Id.* at p. 675.) The defendant argued there should be either a jury trial or MFAA arbitration to resolve the dispute. (*Ibid.*) The trial court awarded the fees to defense counsel less the amount the defendant had already paid. The defendant appealed. (*Aerotek*, at p. 675.)

As pertinent here, the Court of Appeal concluded the Business and Professions Code section 6200, subdivision (b)(3) exception applied because the disputed fees were determined pursuant to Civil Code section 3426.4 and were thus excluded from MFAA arbitration. (*Aerotek*, *supra,* 54 Cal.App.5th at pp. 686–687.) Specifically, the *Aerotek* court held: "To the extent the dispute here concerns 'fees . . . charged' to [the defendant by defense counsel] (Bus. & Prof. Code, § 6200, subd. (a)), we find it concerns fees 'determined pursuant to statute' (*id.*, subd. (b)(3)) and thus is exempted from the MFAA's requirements. Again, as discussed above, we find the award of fees to [counsel], rather than [the defendant], follows from [Civil Code] section 3426.4's default disposition of fees in favor of the attorney. And because the fee to be paid has thus 'been determined pursuant to statute,' the MFAA's arbitration requirement is expressly inapplicable. (Bus. & Prof. Code, § 6200, subd. (b)(3).)" (*Aerotek*, at pp. 686–687.)

Shelly argues this holding means the *Aerotek* court concluded "the fees in question were 'determined pursuant to statute' because the trial court had *already* issued an award of attorneys' fees—i.e., determined the amount of reasonable attorneys' fees awardable to the prevailing attorney." Shelly is simply wrong, and *Aerotek* does not assist her.

12

In brief, Civil Code section 3426.4 is one of many fee-shifting statutes for which courts have had to decide who—between the attorney and the client—is entitled to recover attorney fees and costs as "the prevailing party." Since *Flannery v. Prentice* (2001) 26 Cal.4th 572, courts have similarly construed various fee-shifting statutes, holding the fee award belongs to the attorney. (*Aerotek, supra,* 54 Cal.App.5th at p. 682.) This then is a fee-shifting statute's "default disposition" of attorney fees, where there exists no separate agreement requiring a different disposition of an attorney fee award. (*Ibid.*)

Contrary to Shelly's argument, *Aerotek* does not hold an award of attorney fees is "determined pursuant to statute" solely if the trial court has already assessed and issued the fee award. Instead, the language quoted by Shelly means Civil Code section 3426.4's default disposition of attorney fees governs in *Aerotek*, and as the fees are thus determined by statute, MFAA arbitration is not permitted.

In a related argument, Shelly maintains Attorney Koestner's fees were not determined by court order within the meaning of section 6200, subdivision (b)(3), for two reasons: (1) In appointing Koestner on November 1, 2018, the family court left blank the amount of her compensation on the Judicial Council form order; and (2) In ordering Shelly to bring Koestner's bill current "forthwith" on February 21, 2023, the family court failed to state an amount of attorney fees as required by *Aerotek* for section 6200, subdivision (b)(3) to apply.

This argument fares no better. That the family court did not state the dollar amount Shelly was ordered to pay Koestner is of no consequence. Shelly never maintained she was unaware of the amount of attorney fees due. Nor did Shelly claim she did

13

not understand what the court meant by ordering her to bring her bill current "forthwith," or that she had been ordered to pay half of Koestner's legal fees.[8]

## III.  Sanctions Award Against Shelly

Apart from ordering Shelly to pay Attorney Koestner's legal fees, on June 14, 2023, the family court imposed $10,000 in sanctions against Shelly payable to Paul under Family Code section 271.  Shelly challenges the imposition of the sanctions.

### A.  Family Code Section 271[9] and Standard of Review

Family Code section 271 authorizes an award of attorney fees as a sanction where a party's conduct "frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  (Fam. Code, § 271, subd. (a).)  The party requesting an award under this section is not required to demonstrate any financial need for the award.  (*Ibid.*)  The sanction must not impose an unreasonable financial burden on the sanctioned party.  (*Ibid.*)  An award may be imposed only

---

[8] Because we hold Shelly was not entitled to MFAA arbitration of her attorney fee dispute, we do not reach the issues of whether the fee award was void for the family court's failure to stay the proceedings or for Koestner's failure to give notice under the MFAA.

[9] The Legislature made minor amendments to Family Code section 271 that became effective in January 2024.  (Assem. Bill No. 1179 (2023–2024 Reg. Sess.).)  As the family court ordered sanctions pursuant to the version of Family Code section 271 in existence in 2023, we quote from and premise our analysis on that version of the statute, unless stated otherwise.

14

"after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (Fam. Code, § 271, subd. (b).)

We review the family court's imposition of sanctions under Family Code section 271 for an abuse of discretion. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995.) " '[T]he term judicial discretion implies absence of arbitrary determination, capricious disposition, or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason.' " (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "[W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225–1226.)

### B. Imposition of Sanctions Was Not an Abuse of Discretion

Shelly correctly observes that Paul and Attorney Koestner each sought sanctions against Shelly payable to Koestner. However, the record shows Paul also sought sanctions for himself against Shelly, first for $10,000 and then for $15,000. Shelly is further correct the family court's decision to impose sanctions followed a lengthy and rambling stream of consciousness. Nonetheless, we discern the following sufficient findings embedded in that narrative: The court found true some of the acts Paul attributed to Shelly in his requests for sanctions, which the court agreed unnecessarily prolonged the eight-year litigation and increased attorney fees for Paul's counsel and Koestner. The court was not persuaded by Shelly's opposing argument.

15

The family court imposed sanctions payable to Paul based on some particular acts described in Paul's sanctions requests: (1) Shelly repeatedly lied to the court concerning a physical altercation she had with her minor child; (2) Shelly repeatedly ignored orders to stop attaching the minor child's confidential therapy records to pleadings filed with the court; (3) Shelly used one of her attorney's letterheads to prepare a document filed with the court; and (4) Shelly failed to pay Attorney Koestner's fees as previously ordered by the court. The court found Shelly's acts generated needless litigation and increased attorney fees— "definitely not consistent with Family Code [section] 271." After reviewing Shelly's latest Income and Expense Declaration, the court elected to impose $10,000 rather than $15,000 in sanctions, finding that amount would not be an unreasonable financial burden on Shelly. We find no abuse of discretion.

## C.    No Due Process Violations

Shelly maintains at length that because of "procedural improprieties" she was sanctioned in violation of her due process rights at the June 14, 2023 hearing. Shelly argues (1) the family court failed to provide her with written notice identifying her potentially sanctionable conduct; (2) she did not engage in conduct that was sanctionable; and (3) the sanctions imposed were not properly tethered to attorney fees.

Shelly's claims are unavailing. First, she received adequate notice of the substance of the pending hearing. Shelly filed nearly identical "responsive pleadings" to both Paul's and Attorney Koestner's requests for sanctions in advance of the June 14, 2023 hearing. She refuted their contentions that she engaged in any sanctionable conduct, claiming their "Vexatious litigation caused by Maximalist demands" increased her legal

16

fees.  Second, we have determined the family court did not abuse its discretion in finding Shelly engaged in sanctionable conduct.

In arguing the sanctions were untethered to Paul's attorney fees, Shelly relies on *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142 (*Sagonowsky*), but that decision does not address similar circumstances.  The appellate court in *Sagonowsky* reversed a sanctions award of $680,000 under Family Code section 271 as excessive because there was no dispute that those amounts did not relate to attorney fees or costs and "sanctions available under [Family Code section 271] are limited to 'attorney fees and costs.' " (*Sagonowsky,* at p. 1153.)  The *Sagonowsky* court concluded, "[T]he plain language of [Family Code] section 271 did not authorize the court to award $500,000 to punish" a party or $180,000 for the reduction in the sales price of a property because those amounts were unrelated to attorney fees and costs borne by the other party.  (*Id.* at p. 1156.)  Here, by contrast, Shelly's misconduct, particularly her lies to the court and court filings of her child's confidential therapy records, prolonged the custody dispute and led directly to greater fees charged by Attorney Koestner to both Paul and Shelly.

In any event, Shelly forfeited her due process claims by failing to raise them before the court.  (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 698 [forfeiture of lack of notice argument].)

## DISPOSITION

The orders are affirmed.  Respondent Paul Thompson is entitled to recover his costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

18