Filed 6/24/22  Caru Society for the Prevention etc. v. Anthony CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CARU SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>SUSAN B. ANTHONY,<br><br>　　Defendant and Appellant. | A160487, A161683<br><br>(Solano County<br>Super. Ct. No. FCS049705)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:[*]

It is ordered that the opinion filed herein on June 7, 2022, be modified as follows:  At page 21, paragraph 1, in the second sentence, which begins with "Here, the acts complained of included," the phrase "defendant's keeping 10 or more dogs on her property" is deleted and replaced with "defendant's keeping more than four dogs on her property."

There is no change in the judgment.

---

[*] Jackson, P. J.; Simons, J.; Burns, J.

1

Respondent's petition for rehearing is denied.

Dated: _____          _____, P. J.

Filed 6/7/22  Caru Society for the Prevention etc. v. Anthony CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CARU SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>SUSAN B. ANTHONY,<br><br>      Defendant and Appellant. | A160487, A161683<br><br><br>(Solano County<br>Super. Ct. No. FCS049705) |

This is a consolidated appeal by defendant Susan B. Anthony from final judgment after the trial court granted the summary judgment motion of plaintiff Caru Society for the Prevention of Cruelty to Animals (Caru). Defendant challenges this judgment on the grounds that (1) Caru lacked standing to sue, (2) the trial court erred by granting Caru's motion to deem matters admitted and then refusing to set aside its decision, (3) the court erred in entering summary judgment for Caru, and (4) the awards of declaratory and injunctive relief were unauthorized and overbroad.  We agree the injunctive relief award is overbroad and must be modified.  Otherwise, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant owns and operates a business called California Carolina Dogs from her residential property in Vallejo.[1]  Caru is a society for the prevention of cruelty to animals (SPCA) registered as a nonprofit public benefit corporation with a principal office in Sonoma County.[2]

On October 5, 2017, Caru filed a complaint against defendant asserting one cause of action under Corporations Code section 10404.  This law authorizes an SPCA such as Caru to bring a complaint against a person for violating "any law relating to or affecting animals . . . ."  (Corp. Code, § 10404.)  Caru sought injunctive and declaratory relief.

According to Caru's complaint, defendant violated various state and local laws governing the health and safety of dogs between September 2015 and May 31, 2017.  Defendant's alleged violations included breeding dogs in unsanitary conditions (Polanco–Lockyer Pet Breeder Warranty Act (Health & Saf. Code, § 122045 et seq.)); permitting dogs to disturb the peace (Vallejo Municipal Code (VMC), § 7.36.020); permitting dogs to run at large (VMC, § 7.24.010); maintaining more than four dogs at a time on her residential property (VMC, § 7.04.30); exceeding maximum lot coverage for her dog breeding operation (VMC, § 16.14.060); and exceeding the maximum fence size on her property to conceal her dog breeding operation (VMC, § 16.70.060(F)).

Records obtained by Caru showed that, on May 23, 2017, defendant received an administrative warning notice from the City of Vallejo identifying

---

[1] Defendant is one of the few keepers of the Carolina dog breed on the West Coast.

[2] Caru was known as the Animal Legal Defense Fund Cruelty Prevention Unit until it filed amended and restated articles of incorporation shortly before this action was commenced.

certain required corrective actions on her property, including lowering the fence height to 3.5 feet, removing accessory structures to comply with the 50-percent maximum lot coverage requirement, and finding a new location to breed and sell dogs.  Other law enforcement records showed that at various times since 2015, officers or witnesses reported the following: (1) "at least 50 dogs [were] left" on defendant's property, (2) "about 20 dogs [were visible] through the fence," and (3) "at least 10 adult dogs" were living on her property.  Defendant was cited at least twice for having too many dogs on her property.  Officers and witnesses also reported heavy urine and feces smells emanating from the property, excessive barking, and dogs running at large.

On March 21, 2018, Caru successfully moved for a preliminary injunction barring defendant from "owning, driving, keeping, possessing or having charge or custody of any dog until final determination is reached in this case."  With its motion, Caru offered a declaration from forensic veterinarian Dr. Melinda Merck.  Dr. Merck attested that the law enforcement records showed "an extended and consistent history of unsanitary conditions, over-crowding and improper housing resulting in several reports of dogs at large."  She explained these conditions placed dogs at risk for eye and nose irritations, parasites, stress, fighting, inadequate food, and poor socialization leading to a slew of behavioral problems. Dr. Merck thus opined "[defendant] cannot be trusted to have any dogs" because she subjects them to "egregious conditions that are detrimental to their health and overall well-being."  (Boldface omitted.)

At her November 2018 deposition, defendant admitted still keeping about 14 dogs on her property, contrary to the terms of the preliminary injunction.

On February 11, 2019, Caru moved for summary judgment. After a contested hearing, the court ruled summary judgment was inappropriate because several legal issues remained in the cause of action. However, the court found Caru had established as a matter of law that defendant violated multiple VMC provisions. Caru therefore moved for summary adjudication as to defendant's violations of these provisions.

On November 14, 2019, Caru served defendant numerous requests for admissions (RFA). After defendant failed to serve timely responses to these RFA's, and with a looming trial date, Caru moved to deem matters admitted and for monetary sanctions.[3]

On December 31, 2019, the trial court granted both Caru's motion for summary adjudication and Caru's motion to deem the RFA's admitted. It also imposed $850 in sanctions against defendant for her noncompliance with discovery rules. Based on these rulings, the court found as a matter of law that (1) Caru had standing to bring this action under Corporations Code sections 10400 and 10404; and (2) defendant violated VMC provisions restricting the maximum number of dogs on her property, requiring her to use a leash or restraint when taking the dogs out in a public place, prohibiting habitual barking and other disturbances of the peace of others, restricting lot coverage to a maximum of 50 percent, and limiting fence height to a maximum of 3.5 feet.

These legal findings prompted Caru to file a renewed motion for summary judgment to dispose of any remaining issue. Caru argued that in light of the deemed admissions there were no remaining triable issues of

---

[3] Defendant had already been ordered to pay $2,500 in sanctions based on her failure to comply with the court's order compelling further responses without objections to Caru's written discovery requests.

disputed facts.  Defendant, in turn, moved to set aside the order to deem matters admitted.  On June 2, 2020, the court heard the motions concurrently.  Afterward, the court granted Caru's motion and denied defendant's motion.

On November 17, 2020, the court entered final judgment in Caru's favor and a permanent injunction against defendant.  Under this permanent injunction, defendant was enjoined from "owning, driving, keeping, possessing, or having charge or custody of any dog indefinitely until good cause is shown that this order should be modified."  The court also granted Caru "full ownership and custody over all dogs, including unborn ones, which are under the ownership, possession, charge, or custody of Defendant," including "the right for [Caru] to take custody of the dogs and transfer them to other rescues or adopters."[4]  On December 2, 2020, defendant filed a timely notice of appeal.

---

[4] The court's permanent injunction further states:  "In order to facilitate Caru SPCA taking ownership and custody of the dogs, it is further ordered that:

"a. Defendant must disclose to Caru SPCA, under penalty of perjury and within seventy-two (72) hours of receiving notice of this Order, a census of all dogs owned, kept, possessed, or in the charge or custody of Defendant as of the day the Order is signed, including each dog's: name, microchip number, description, legal owner(s), location, age, sex, pregnancy status, spay or neuter status, known health or behavioral issues, vaccinations, and any current medications.  The duty to provide Caru SPCA a current census is continuous, and Defendant must supplement the census within seventy-two (72) hours after any change in ownership, keeping, possession, charge, or custody of dogs occurs.

"b. Caru SPCA and its agents are authorized to enter the lands, shelters, and structures on Defendant's properties to take custody of all dogs that Caru SPCA is legally entitled to take by entering any of Defendant's properties . . . .

"c. Caru SPCA and its agents arc authorized to document, by photographic and audiovisual means, the removal of dogs from Defendant's

**DISCUSSION**

Defendant argues on appeal that: (1) Caru lacks standing under Corporations Code section 14502 to enforce the prevention of cruelty to animals statute (Corp. Code, § 10404); (2) the trial court abused its discretion in granting Caru's motion to deem matters admitted and denying her subsequent motion to set aside the ruling; (3) the trial court erroneously granted summary judgment in Caru's favor; and (4) the declaratory and/or injunctive relief ordered by the trial court was unauthorized and overbroad. We address each issue in turn.

## I.  *Standing.*

Defendant argues Caru lacked standing to bring this lawsuit because "[o]nly humane officers [and not SPCA's] have standing to pursue a private right of action in civil court."  (Initial capitalization and boldface omitted.) Defendant is mistaken.

Standing is a threshold jurisdictional issue, without which " 'no justiciable controversy exists.' "  (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 813.)  Standing is a question of law reviewed de novo on appeal.  (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 368.)

The basis for Caru's sole cause of action is Corporations Code section 10404, which provides:  "Any such corporation [organized as an SPCA under

---

properties, provided that any photos and videos taken of the Defendant's real property pursuant to this Order may not be publicly disseminated so as to protect Defendant's privacy.

"d. Defendant is required to be present at the specified properties with twenty-four (24) hour notice from Caru SPCA and must cooperate with Caru SPCA or its agents in taking custody of Defendant's dogs.

"e. Solano County Sheriff's Office is authorized, and is hereby requested, to assist with a Civil Standby by being present and entering Defendant's properties when Caru SPCA's [*sic*] or its agents take custody of the dogs."

6

Corporations Code section 10400[5]], *or* humane officer thereof, may proffer a complaint against any person, before any court or magistrate having jurisdiction, for the violation of any law relating to or affecting animals and may aid in the prosecution of the offender before the court or magistrate." (Italics added.)  On its face, this statute authorizes an SPCA such as Caru or, *alternatively*, a humane officer of an SPCA to bring a complaint such as this one for violations of state and local laws enacted for the protection of animals. (See *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142–143 ["Since 1905, California has authorized the formation of corporations for the prevention of cruelty to animals.  ([Citation]; see also Stats. 1947, ch. 1038, § 10404, p. 2423, enacting Corp. Code, § 10400.)  Such a corporation (hereafter section § [*sic*] corporations) 'may prefer [*sic*] a complaint against any person, before any court or magistrate having jurisdiction, for the violation of any law relating to or affecting . . . animals, and may aid in the prosecution of any such offender before such court or magistrate' "].)

Defendant responds, "To invoke the benefits of Corporations Code section 10404 standing, Respondent must follow all of the requirements of the comprehensive statutory scheme," which includes appointing a humane officer.  According to defendant, only a humane officer appointed under

---

[5] Corporations Code section 10400 provides:  "Corporations for the prevention of cruelty to animals may be formed under the Nonprofit Public Benefit Corporation Law (Part 2 (commencing with Section 5110)) by 20 or more persons, who shall be citizens and residents of this state.  If the corporation is formed on or after January 11, 2011, its articles of incorporation shall specifically state that the corporation is being formed pursuant to this section."  Defendant does not dispute Caru is a corporation for the prevention of cruelty to animals meeting these statutory requirements.

Corporations Code section 14502 is authorized to enforce laws for the prevention of cruelty to animals. She is again mistaken.

Corporations Code section 14502, subdivision (a)(1)(A)(i) provides that "no entity, other than a humane society or [SPCA], shall be eligible to petition for confirmation of an appointment of any individual as a humane officer, the duty of which shall be the enforcement of the laws for the prevention of cruelty to animals." This provision also sets forth what is required for an individual to be appointed as and to perform the duties of a humane officer. (Corp. Code, § 14502.) As defendant notes, Corporations Code section 14504 mandates, "All humane societies and societies for the prevention of cruelty to animals, and all humane officers, shall be in full compliance with Section 14502 on or before January 1, 2012."

By its clear language, this statutory scheme authorizes an SPCA to appoint a humane officer whose duty "shall be the enforcement of the laws for the prevention of cruelty to animals," and requires such officers to meet certain requirements. However, contrary to defendant's claim, there is no language in these statutes requiring an SPCA to appoint a humane officer, much less language precluding an SPCA that does *not* appoint such officer from proffering a complaint against an individual for violating laws relating to or affecting animals under Corporations Code section 10404. (See *Animal Legal Defense Fund v. California Exposition & State Fairs* (2015) 239 Cal.App.4th 1286, 1296 (*California Exposition*) [" 'the Corporations Code and the Penal Code [Pen. Code, §§ 596–599[6]] provide for extensive regulation and empowerment of section 10400 corporations and humane officers' " to enforce

_____

[6] Penal Code sections 596 to 599 criminalize various forms of cruel or inhumane treatment of animals.

8

California's laws for the prevention of cruelty to animals].)[7] Defendant's standing challenge thus fails. "Where, as here, 'the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction.' " (*Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 732.)

## II. *Caru's Motion to Deem Matters Admitted.*

Defendant challenges as abuses of discretion the trial court's grant of Caru's motion to deem matters admitted and subsequent denial of her motion to set aside the ruling. These challenges fail.

### A. **The trial court properly granted Caru's motion to deem matters admitted.**

The order granting Caru's motion to deem matters admitted can only be overturned if the court abused its discretion. (*Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 245–246, overturned on another point in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557, fn. 8.) " 'Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]' [Citation.] The trial court's determination will be set aside only when it has been established that there was no legal justification for the order granting or denying the discovery in question."

---

[7] In *California Exposition*, the reviewing court held that a taxpayer action under Code of Civil Procedure section 526a was not an available remedy to enforce animal cruelty laws (Pen. Code, §§ 597, 597t) relating to the treatment of pregnant pigs displayed at the state fair. (*California Exposition, supra*, 239 Cal.App.4th at pp. 1295, 1298.) Pointing to the "detailed legislative scheme" under Penal Code section 599a and Corporations Code section 10404 and 14502, the court concluded "the Legislature intended the enforcement mechanisms it established—and the entities in whom it entrusted such enforcement—to be the exclusive mechanisms for, and entities charged with, such enforcement." (*California Exposition*, at pp. 1296–1298, 1301.)

9

(*Ibid.*)  The burden rests on defendant, as the complaining party, to demonstrate from the record that such an abuse has occurred.  (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984–985.)

In applying these rules, we keep in mind that "trial courts issuing discovery orders and appellate courts reviewing those orders should do so with the prodiscovery policies of the statutory scheme firmly in mind.  A trial court must be mindful of the Legislature's preference for discovery over trial by surprise, must construe the facts before it liberally in favor of discovery, may not use its discretion to extend the limits on discovery beyond those authorized by the Legislature, and should prefer partial to outright denials of discovery.  [Citation.]  A reviewing court may not use the abuse of discretion standard to shield discovery orders that fall short:  'Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.' "  (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

" ' "[T]he purpose of the admissions procedure . . . is to limit the triable issues and spare the parties the burden and expense of litigating undisputed issues."  Sometimes, the admissions obtained will even leave the party making them vulnerable to summary judgment.' (1 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) § 9.1, p. 9-2, fns. omitted, quoting *Shepard & Morgan v. Lee & Daniel, Inc.* (1982) 31 Cal.3d 256, 261 [citations].)  Matters that are admitted or deemed admitted through RFA discovery devices are conclusively established in the litigation and are not subject to being contested through contradictory evidence.  [Citation.]" (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 775 (*St. Mary*).)

10

Defendant claims the court abused its discretion in granting Caru's motion because (1) the motion was untimely due to lack of notice of the February 4, 2020 hearing date and (2) she served responses to the RFA's before the February 4, 2020 hearing commenced.[8]  The following law governs.

"Unless the responding party moves promptly for a protective order under [Code of Civil Procedure] section 2033.080, he or she, within 30 days of service of the RFAs ([Code Civ. Proc.,] § 2033.250), shall respond in writing under oath and separately to each RFA ([Code Civ. Proc.,] § 2033.210, subd. (a)) and 'shall answer the substance of the requested admission, or set forth an objection to the particular request' (*id.*, subd. (b))."  (*St. Mary, supra*, 223 Cal.App.4th at p. 774.)  If timely responses are not served, the propounding party may move to have RFA's to which timely responses are not received deemed admitted.  (*Id.* at pp. 775–776.)  However, "a responding party's service, prior to the hearing on the 'deemed admitted' motion, of substantially compliant responses, will defeat a propounding party's attempt under [Code of Civil Procedure] section 2033.280 to have the RFAs deemed admitted."  (*Id.* at p. 776.)

### 1.     *Defendant had actual and constructive notice of the February 4, 2020 hearing date.*

On December 31, 2019, Caru moved to deem matters in the RFA's admitted.  On the same day, Caru filed and served an ex parte application for an order shortening the time to hear the motion given that the trial date was then set for January 15, 2020.  A hearing on this application was held January 7, 2020.  Defendant, represented by counsel, appeared and opposed the ex parte application.  In doing so, defendant's counsel several times

[8] There is no dispute defendant missed the statutory deadline of December 16, 2019, for responding to Caru's RFA's.  (See Code Civ. Proc., § 2033.250, subd. (a).)

11

acknowledged that the motion was currently scheduled to be heard on February 4, 2020. The court denied Caru's ex parte application, and the motion was heard as scheduled on February 4, 2020, the date listed on the court's online docket. Defendant filed opposition papers to Caru's motion, and her attorney appeared at the February 4, 2020 hearing for argument.

Contending there was no proper notice of the February 4, 2020 hearing, defendant relies on the fact that Caru served an amended notice of the February 4, 2020 hearing by mail on January 17, 2020. She reasons: "Applying the 16-court day rule set forth in Code of Civil Procedure section 1005, then adding an additional 5 calendar days for service by U.S. Mail as required by Code of Civil Procedure section 1013, [Caru's] amended notice of motion was . . . 14 days late." This argument fails.

"The principal purpose of the requirement to file and serve a notice of motion a specified number of days before the hearing ([Code of Civ. Proc.,] § 1005, subd. (b)) is to provide the opposing party adequate time to prepare an opposition. That purpose is served if the party appears at the hearing, opposes the motion on the merits, and was not prejudiced in preparing an opposition by the untimely notice." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 343.) " 'Accordingly, a party who appears and contests a motion in the court below cannot object on appeal . . . that he had no notice of the motion or that the notice was insufficient or defective.' " (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.) Because defendant did just that on February 4, 2020, she cannot rely on the notice rules for purposes of appeal.

> 2. *Defendant failed to serve substantially compliant RFA responses before the hearing.*

Defendant asserts, without offering any evidence, that she served substantially compliant responses to the RFA's prior to the commencement of the February 4, 2020 hearing. The trial court found her responses

12

noncompliant with the statutory requirements in denying her motion to set aside the order to deem matters admitted. Specifically, the court found defendant's responses contained objections in violation of Code of Civil Procedure section 2033.280, subdivision (a).[9] In addition, defendant served her responses by e-mail rather than mail, although her attorney acknowledged the parties had no agreement to accept electronic service. At oral argument, defendant's attorney insisted that he personally gave Caru a copy of defendant's responses just before the start of the February 4, 2020 hearing, in addition to serving Caru by e-mail on February 3. Even if true, defendant's briefs on appeal contain no showing that these personally served responses were substantially compliant. Defendant had the burden on appeal to prove the trial court's contrary finding was wrong. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"]; *In re Marriage of Bowen* (2001) 91 Cal.App.4th 1291, 1301.) She failed to meet this burden.

Defendant also claims the court should have granted her request at the February 4, 2020 hearing for additional time to serve amended RFA responses. The law is otherwise. "Unless the court determines that the responding party 'has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with Section 2033.220,' it must order the RFAs deemed admitted. ([Code Civ. Proc., § 2033.280], subd. (c).) . . . As one court put it: '*If the party manages to serve its responses before the hearing, the court has no discretion but to deny*

---

[9] "If a party to whom requests for admission are directed fails to serve a timely response, the following rules apply: [¶] (a) The party to whom the requests for admission are directed waives any objection to the requests . . . ." (Code Civ. Proc., § 2033.280, subd. (a).)

13

*the motion. But woe betide the party who fails to serve responses before the hearing. In that instance the court has no discretion but to grant the admission motion, usually with fatal consequences for the defaulting party.* One might call it "two strikes and you're out" as applied to civil procedure.' [Citation.]" (*St. Mary, supra*, 223 Cal.App.4th at p. 776, italics added.) Accordingly, the court did not err in refusing to grant defendant additional time to respond.

3. *Defendant did not establish grounds for relief from the court's order under Code of Civil Procedure section 473.*

Defendant also challenges the court's denial of her request to set aside its order deeming the RFA's admitted on grounds of mistake, surprise, inadvertence or excusable neglect (Code Civ. Proc., § 473, subd. (b)).[10]

Rejecting this argument below, the court found that "while the defendant argues that the February 4 order should be set aside 'on the ground of surprise and/or excusable neglect,' the defendant never articulates facts which constitute the same. In general, if the error at issue was one of counsel, supported by an attorney declaration of fault, relief is mandatory. *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1604; *Lorenz v. Commercial Accept. Ins. Co.* (1995) 40 Cal.App.4th 981. However, [defendant's attorney's] declaration admits no fault on his part. Moreover, defendant has admitted no mistake, inadvertence or excusable neglect. On that basis, the motion to set aside is denied." (All capitalization omitted, italics added.)

---

[10] Code of Civil Procedure section 473, subdivision (b) provides in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

14

On appeal, defendant does not mention these findings by the trial court, much less attempt to disprove them with reference to relevant evidence or on-point legal authority. Instead, she merely repeats the arguments we have already rejected—to wit, that Caru failed to properly serve notice of the February 4, 2020 hearing and that she served RFA responses prior to commencement of that hearing. Defendant has therefore failed her burden on appeal to affirmatively establish trial court error. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p.1133; *In re Marriage of Bowen, supra*, 91 Cal.App.4th at p. 1301.) The order denying her motion for relief stands.

## III. *Grant of Renewed Summary Judgment for Caru.*

Defendant next argues the trial court erred in granting Caru's renewed summary judgment motion. She reasons that were it not for the court's order deeming matters admitted, there would have been no basis for summary judgment. This reasoning fails, as we have already held the order to deem matters admitted was proper.

Defendant also claims her deemed admissions were contradicted by "other evidence available to the court." As noted by the trial court, however, the "other evidence" defendant is referring to consists of several declarations that she filed in opposing summary judgment. Citing *Gribin Von Dyl & Associates, Inc. v. Kovalsky* (1986) 185 Cal.App.3d 653, the trial court ruled these declarations were not sufficient to raise triable issues of fact capable of defeating summary judgment. (*Id.* at p. 662 ["In opposition to the motion for summary judgment, defendant submitted his declaration wherein he contradicted several of his deemed admissions. As against the admissions, the declaration was unavailing and did not raise triable issues of fact" (fn. omitted)].)

15

Defendant contends the court's ruling in this regard was wrong. Yet, she offers no legal argument in support of her claim. Nor does defendant direct this court to any particular evidence in the record that might contradict one or more of the deemed admissions. Under these circumstances, there are no grounds for reversing summary judgment. As stated *ante*, defendant, as the appellant, bore the burden in this court of affirmatively proving the trial court erred. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133.)

## IV.  *Injunctive and Declaratory Relief.*

Last, defendant argues the injunctive and declaratory relief awards were legally unauthorized because: (1) there was no contract between defendant and Caru, a prerequisite to declaratory relief under Code of Civil Procedure section 1060; (2) Caru raised injunctive relief as a cause of action when it is only a remedy; (3) declaratory and injunctive relief are not available remedies for alleged violations of the Polanco–Lockyer Pet Breeder Warranty Act (Health & Saf. Code, § 122045 et seq.) or the VMC; and (4) the injunctive relief was overbroad in enjoining her from owning dogs. Only the last argument has merit.

### A.  **Standard of Review.**

We review a trial court's decision to grant or deny injunctive or declaratory relief under the abuse of discretion standard. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.) We resolve purely legal issues de novo. (*In re Butler* (2018) 4 Cal.5th 728, 738–739.)

### B.  **Caru was properly awarded declaratory and injunctive relief for defendant's legal violations.**

Defendant incorrectly contends there was no legal basis for awarding Caru declaratory or injunctive relief for several reasons.

16

As an initial matter, we reject defendant's claim that Caru improperly raised injunctive relief as a cause of action rather than a remedy. Caru's cause of action arose under Corporations Code section 10404, which (as explained) authorizes SPCA's such as Caru to bring a complaint against a person "for the violation of any law relating to or affecting animals . . . ." (Corp. Code, § 10404.) Caru's complaint identifies violations of several such laws relating to or affecting animals, including breeding dogs in unsanitary conditions (Health & Saf. Code, § 122065); permitting dogs to disturb the peace (VMC, § 7.36.020); permitting dogs to run at large (VMC, § 7.24.010); maintaining more than four dogs at a time on her residential property (VMC, § 7.04.30); exceeding maximum lot coverage for her dog breeding operation (VMC, § 16.14.060); and exceeding the maximum fence size on her property to conceal her dog breeding operation (VMC, § 16.70.060(F)). Thus, Caru's *cause of action* was properly grounded in substantive violations of laws relating to animals. (See Corp. Code, § 10404.) The *remedy* Caru sought for these violations was injunctive (and declaratory) relief.

Further, injunctive and declaratory relief are appropriate remedies for Caru's cause of action under Corporations Code section 10404. Defendant counters that under the Polanco–Lockyer Pet Breeder Warranty Act, Caru's relief was limited to a civil penalty (Health & Saf. Code, § 122110, subd. (a))[11] and under the VMC, Caru was limited to "administrative citations, administrative charges, liens, and special assessments, pursuant to Chapter 1.15.040 of the [VMC]." Yet, defendant cites no authority for her proposed limitations on Caru's remedies. Nor do we know of any authority. Neither

---

[11] Health and Safety Code section 122110, subdivision (a) provides in relevant part: "Except as otherwise specified herein, any person violating any provision of this article other than Section 122060 shall be subject to civil penalty of up to one thousand dollars ($1,000) per violation."

17

the Polanco–Lockyer Pet Breeder Warranty Act (Health & Saf. Code, § 122110, subd. (a)) nor the cited VMC provisions expressly limit the remedies available for violations.  To the contrary, VMC section 1.15.020(A) states:  "This chapter provides for administrative citations which are *in addition to* all other legal remedies, including criminal, civil or other legally established procedures, which may be pursued to address violations identified in this chapter."  (Italics added.)

Further, under Code of Civil Procedure section 526, a court may award injunctive relief "[w]hen it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually."  (Code. Civ. Proc., § 526, subd. (a)(1).)  Here, Caru, a corporation formed under Corporations Code section 10400 for the purpose of enforcing laws for the prevention of cruelty to animals (see *California Exposition, supra*, 239 Cal.App.4th at p. 1296), seeks to restrain defendant's ongoing violation of myriad state and local laws that do just that—prevent dog breeders, such as defendant, from maintaining their property in conditions harmful to dogs.  Accordingly, the trial court did not abuse its discretion by ordering injunctive relief for Caru's successful Corporations Code section 10404 claim.

Finally, defendant contends, contrary to the statutory language itself, that Code of Civil Procedure section 1060[12] "requires a contract or written

---

[12] Code of Civil Procedure section 1060 provides in relevant part:  "Any person interested under a written instrument, excluding a will or a trust, or under a contract, *or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property* . . . , may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior

18

instrument as to which a judicial declaration is sought." Defendant is wrong. "A cause of action for declaratory relief may adjudicate future rights and liability between parties who have a relationship, *either contractual or otherwise*. . . . To assert a cause of action for declaratory relief, Code of Civil Procedure section 1060 requires that there be an ' "*actual controversy* relating to the legal rights and duties of the respective parties," ' not an abstract or academic dispute." (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 28–29, 1st italics added; see *Cardellini v. Casey* (1986) 181 Cal.App.3d 389, 395.) Caru's cause of action meets this standard. As such, defendant's declaratory relief challenge fails.

### C. The permanent injunction is overbroad.

However, while we reject defendant's claims that Caru was not entitled to declaratory or injunctive relief as a legal matter, we agree with her the permanent injunction entered by the court was overbroad. Specifically, the court: (1) enjoined defendant from "owning, driving, keeping, possessing or having charge or custody of any dog indefinitely until good cause is shown that this order should be modified"; and (2) granted Caru "full ownership and custody over all dogs, including unborn ones, which are under the ownership, possession, charge or custody of [d]efendant," including the right "to take custody of the dogs and transfer them to other rescues or adopters." We know of no authority for an injunction of this scope.

We found one statute authorizing a court to seize a dog owner's canine property (Pen. Code, § 597.1), although it was not raised as a cause of action in the complaint or referenced in the court's order. Penal Code section 597.1 is "a self-contained regulatory scheme covering treatment of animals."

---

court for a declaration of his or her rights and duties in the premises . . . ." (Italics added.)

19

(*Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1216.) Relevant here, this statute provides that when an owner or keeper of an animal commits a misdemeanor by permitting the animal to be in any building or street without proper care or attention, a peace officer or humane society officer "shall take possession of the stray or abandoned animal and shall provide care and treatment for the animal until the animal is deemed to be in suitable condition to be returned to the owner." (Pen. Code, § 597.1, subd. (a)(1).) Unless there are exigent circumstances, the owner or keeper of the animal is entitled to a hearing before the animal is seized or impounded. (*Id.*, § 597.1, subds. (g), (j).) Further, if the animal owner or keeper is convicted under section 597.1, the court "may also order, as a condition of probation, that the convicted person be prohibited from owning, possessing, caring for, or residing with, animals of any kind, and require the convicted person to immediately deliver all animals in the convicted person's possession to a designated public entity for adoption or other lawful disposition . . . ." (*Id.*, § 597.1, subd. (*l*)(1).) If, however, the owner or keeper is not ultimately convicted after an animal was seized or impounded under this provision, "the court shall, on demand, direct the release of seized or impounded animals to the defendant upon a showing of proof of ownership." (*Id.*, § 597.1, subd. (*l*)(2).)

This statute appears to authorize a court to grant a humane society temporary possession of an at-risk animal for the purpose of providing suitable care. However, it does not authorize the court to grant the humane society "full ownership" of an at-risk animal. Nor does the provision authorize what the court did here—to wit, enjoin an animal keeper from owning "any dog indefinitely until good cause is shown" when the keeper was

20

not charged, much less convicted, under the provision.  (See Pen. Code, § 597.1, subd. (a)(1).)

To the contrary, in civil cases such as this one, a permanent injunction is intended to "restrain[] the commission or continuance of the act complained of, either for a limited period or perpetually."  (Code Civ. Proc., § 526, subd. (a)(1).)  Here, the acts complained of included defendant's keeping 10 or more dogs on her property, allowing the dogs to excessively bark and run at large, and failing to prevent "overpowering flies and urine and feces odor."  While the court's permanent injunction could properly restrain defendant from continuing to commit these acts, this injunction, as currently drafted, goes too far.  It restrains defendant from "owning, driving, keeping, possessing or having charge or custody of any dog indefinitely" and, indeed, transfers her ownership interest in the subject dogs to Caru.  We know of no authority for an order of this magnitude under the facts of this case.

Caru responds that "Penal Code section 597.1 does not purport to be an exclusive statutory scheme for all animal seizures for violations of all laws" and that, here, the court's grant of authority to award injunctive relief was not the Penal Code provision but Corporations Code section 10404.  Caru misses the point.  Corporations Code section 10404, already discussed at length, does not authorize the permanent injunction entered here to the extent it dispossesses defendant of her right to own dogs.  Nor does Caru offer any other legal authority to support its theory that a court may dispossess a dog owner of its canine property for violating local or state civil law.  Indeed, under the Penal Code, a court may only do so after affording the misdemeanant owner certain legal protections, such as the right to a hearing.

21

(Pen. Code, § 597.1.) In the absence of such authority, we conclude the permanent injunction, as presently drafted, must be modified.[13]

## DISPOSITION

The judgment is reversed with respect to the permanent injunction entered in this case, and the matter is remanded to the trial court for the purpose of modifying said injunction in accordance with this opinion. The judgment is otherwise affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Burns, J.

A160487, A161683/*Caru Society for the Prevention of Cruelty to Animals v. Anthony*

---

[13] Given this holding, we need not address defendant's alternative argument that the court's order violates her constitutional right to own property. (*Lyng v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 ["A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"].)